IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ESTATE OF JOYCE ROSAMOND PETERSEN,<br><br>          Plaintiff,<br><br>vs.<br><br>ROBERT W. BOLAND, JR., UNITED FINANCIAL SERVICES, WILLIAM E. BITTERS and JOHN L. HENRY,<br><br>          Defendants. | 8:16CV183<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on Defendant William E. Bitters's Amended Motion to Dismiss for Failure to State a Claim (Filing No. 104); Defendant Robert W. Boland, Jr.'s Amended Motion to Dismiss for Failure to State a Claim (Filing No. 106); and Defendant John L. Henry's Motion for a Cease and Desist Order (Filing No. 111), Motion to Dismiss (Filing No. 112), and Motion to Surpress [sic] and Request for Sanctions (Filing No. 120).  This is an action brought by the Estate of Joyce Petersen ("Estate") for damages and injunctive relief in connection with alleged investment advice imparted by defendants Bitters and Boland and a promissory note executed by defendant Henry.  Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332(a).

I.     FACTS

The Estate of Joyce Petersen, formerly known as Joyce Scroggins ("decedent") alleges ten causes of action:  (1) breach of fiduciary duty; (2) negligence; (3) negligent misrepresentation; (4) breach of contract; (5) breach implied duty of good faith and fair dealing; (6) fraud; (7) assumpsit; (8) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq.; (9) violations of the Nebraska Uniform Deceptive Trade Practices Act ("NUDTPA"), Neb. Rev. Stat. § 87-301 *et seq*.; and (10) violations the Nebraska Consumer Protection Act ("NCPA"), Neb. Rev. Stat. § 59-1601 *et seq*.  The Estate alleges that Bitters, doing business as United Financial

Information Services and/or United Financial Services, LLC, is registered with the Nebraska Department of Insurance as a "Producer" with an active license. He is also licensed in Iowa to sell life insurance and annuities. He allegedly gave financial advice to the decedent's husband, William Scoggins, during her marriage to Mr. Scoggins, and continued to advise the decedent after Mr. Scoggins's death in exchange for compensation pursuant to a written or oral contract. The Estate alleges Boland is Bitters's "partner" and knew or should have known of Bitters's conduct. On Bitters's advice, the decedent allegedly loaned Henry the sum of $150,000.00. Henry executed a promissory note in connection with that loan in Nebraska on February 8, 2008. The note was due, together with compound interest of 11% per annum, one year later, with an optional one-year renewal. Henry subsequently defaulted on the note.

The Estate alleges that Bitters misrepresented to the decedent that the loan to Henry was a sound and reasonable investment. It alleges that these false statements were made during meetings at the Comfort Inn & Suites in Omaha. Bitters allegedly persuaded the decedent that a loan to Henry was a better investment than her annuities, and she sold $150,000 in annuities to make the loan to Henry. Bitters allegedly told the decedent over the telephone that she had a "guaranteed return" on all of her investments with him. The representations were also made in an accounting statement dated June 4, 2012, that Bitters allegedly mailed to the decedent. The Estate also alleges that Bitters received "commissions and/or kick-backs" out of the $150,000 investment.

The Estate further alleges that from 2011 to 2013 Bitters assured the decedent that she would be paid. The Estate alleges that the decedent did not discover the defendants' allegedly wrongful conduct until 2013.[1] It also alleges that in phone calls that took place

---

[1] Although the Estate's factual allegations are generally couched in terms of conduct by all of the defendants, the only factual allegations that relate to Henry are claims for breach of contract and assumpsit that relate to the promissory note. Bitters and Boland are alleged to have breached an oral or written contract with the decedent for services and investment advice.

2

between 2009 and 2013, Bitters misled the decedent into believing she would be repaid, and he discouraged her from taking legal action. The decedent died on October 20, 2013. This action was filed on December 1, 2014.[2]

Bitters asserts that all of the claims in the Estate's First Amended Complaint are subject to dismissal for failure to state a claim on which relief can be granted. Further, he contends the claims are barred by statutes of limitation, and are not subject to equitable estoppel.

Boland contends there are no allegations in the First Amended Complaint that relate to him and also argues that the Estate's claims are barred by statutes of limitation.

Henry, pro se, moves to dismiss the plaintiff's breach-of-contract claim as time-barred and also argues insufficiency of process.

## II. DISCUSSION
### A. Pleading Standards
#### 1. Law

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). When ruling on a defendant's motion to dismiss, a judge must rule "on the assumption that all the allegations in the complaint are true," *Twombly*, 550 U.S. at 555, and draw all reasonable inferences in favor of the non-moving party. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009).

---

[2]The matter was originally filed in the Eastern District of Texas but transferred to this Court on March 17, 2016.

Courts follow a "two-pronged approach" to evaluate Federal Rule of Civil Procedure 12(b)(6) challenges. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, the Court divides the allegations between factual and legal allegations; factual allegations should be accepted as true but legal conclusions should be disregarded. *Id.* Second, the Court reviews factual allegations for facial plausibility. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 677. The Court should not "incorporate some general and formal level of evidentiary proof into the 'plausibility' requirement of *Iqbal* and *Twombly*." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012). The question at this preliminary stage is not whether a plaintiff might be able to prove its claim, but whether it has "adequately asserted facts (as contrasted with naked legal conclusions) to support" those claims. *Id.* The complaint, however, must still "include sufficient factual allegations to provide the grounds on which the claim rests." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009). When it appears from the face of the complaint that a limitation period has run, a statute of limitations defense may be asserted in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004).

Under Federal Rule of Civil Procedure 9(b), a party alleging fraud "must state with particularity the circumstances constituting fraud." Rule 9(b) is interpreted "'in harmony with the principles of notice pleading,' and to satisfy it, the complaint must allege 'such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.'" *Drobnak*, 561 F.3d at 783 (quoting *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002)). Essentially, the complaint "must plead the 'who, what, where, when, and how' of the alleged fraud.'" *Id.* (quoting *United States ex rel. Joshi v. St. Luke's Hosp.*, 441 F.3d 552, 556 (8th Cir. 2005)). Because this higher degree of notice is intended to enable the defendant to respond specifically and quickly to

potentially damaging allegations, conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule. *Id*.

A defendant must raise an objection to the sufficiency of process or service in his answer or pre-answer motion. Fed. R. Civ. P. 12(h)(1). If objections to service are not raised in the answer or pre-answer motion, they are waived. *Resolution Trust Corp. v. Starkey*, 41 F.3d 1018, 1021 (5th Cir. 1995); *see City of Clarksdale v. BellSouth Telecomms., Inc.*, 428 F.3d 206, 214, n.15 (5th Cir. 2005) (holding that plaintiff's failure to properly serve defendant with original pleading was not problematic because defendant filed an answer and, therefore, "submitted to the jurisdiction of the court" and waived its right to object to service of process).

### 2. Discussion

The Court first finds no merit to Henry's assertion of insufficient process. The record shows that Henry has made an appearance pro se in this action and has filed an Answer (Filing No. 110) to the First Amended Complaint (Filing No. 106). He did not raise insufficiency of service of process in his Answer. Also, he acknowledges receiving a copy of the First Amended Complaint.

Henry has also filed motions for a "Cease and Desist Order," and "to Surpress [sic] and Request for Sanctions." He asks the Court to order the Estate to "stop any and all attempts to serve him at Metro Audio Dynamics," to enjoin the defendants from "further harassment of the establishment known as Metro Audio Dynamics" and to impose sanctions on the plaintiff "as the court sees fit." The court finds these motions are frivolous and they will be denied.

As discussed below, the Court finds that certain allegations in Estate's First Amended Complaint survive the Rule 12(b)(6) and Rule 9(b) challenges, albeit barely so in some cases.

### B. Negligence/Breach of Fiduciary Duty
#### 1. Law

"In order to recover in a negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages." *A.W. v. Lancaster Cnty. Sch. Dist. 0001*, 784 N.W.2d 907, 913 (2010). "[T]he threshold inquiry in any negligence action is whether the defendant owed the plaintiff a duty." *Durre v. Wilkinson Dev., Inc.*, 830 N.W.2d 72, 80 (Neb. 2013) (citations omitted). A "duty" is an obligation, to which the law gives recognition and effect, to conform to a particular standard of conduct toward another. *Id.* The question whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation. *Id.* If there is no duty owed, there can be no negligence. *Id.*

To recover on a breach of fiduciary duty claim, a plaintiff must prove: (1) the defendant owed it a fiduciary duty; (2) the defendant breached the duty; (3) the breach was the cause of the injury to the plaintiff; and (4) the plaintiff was damaged. *McFadden Ranch, Inc. v. McFadden*, 807 N.W.2d 785, 790 (Neb. Ct. App. 2011). The existence of a fiduciary duty and the scope of that duty are questions of law for a court to decide. *Gonzalez v. Union Pac. R.R.*, 803 N.W.2d 424, 446 (Neb. 2011). A fiduciary duty arises out of a confidential relationship which exists when one party gains the confidence of the other and purports to act or advise with the other's interest in mind. *Id.* In a confidential or fiduciary relationship in which confidence is rightfully reposed on one side and a resulting superiority and opportunity for influence are thereby created on the other, equity will scrutinize the transaction critically, especially where age, infirmity, and instability are involved, to see that no injustice has occurred. *Id.*

#### 2. Discussion

The allegations in the Estate's First Amended Complaint are sufficient to state claims for negligence and breach of fiduciary duty against Bitters and Boland. The reasonable inferences that can be drawn in the Estate's favor supports those claims. The

6

Estate alleges that Bitters offered investment advice to the decedent. From the factual allegations, the Court can infer, with respect to Bitters, the existence of a duty of reasonable care and an alleged confidential or fiduciary relationship. At the pleading stage, a plaintiff is not required to explain precisely how the defendant's conduct was unlawful, it is sufficient to plead facts indirectly showing unlawful behavior. Taking the allegations of the First Amended Complaint as true, the Estate's allegations that Boland is Bitters's partner, knew or should have known of Bitters's allegedly wrongful conduct, and is jointly liable for the alleged actions are sufficient—though barely—to withstand a motion to dismiss.

### C. Fraud/Negligent Misrepresentation
#### 1. Law

In order to prove fraud under Nebraska law, a plaintiff must prove: (1) a representation was made; (2) the representation was false; (3) when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) it was made with the intention that the plaintiff should rely upon it; (5) the plaintiff did so rely; and (6) she suffered damage as a result. *Freeman v. Hoffman-La Roche, Inc.*, 618 N.W.2d 827, 844-45 (Neb. 2000). False representations must be the proximate cause of the damage before a party may recover. *Huffman v. Poore*, 569 N.W.2d 549, 560 (Neb. Ct. App. 1997).

Liability for negligent misrepresentation is based upon the failure of the actor to exercise reasonable care or competence in supplying correct information. *Gibb v. Citicorp Mortgage, Inc.,* 518 N.W.2d 910, 920 (Neb. 1994). "Under the law of negligent misrepresentation, 'one who, in a transaction in which he has a pecuniary interest, supplies false information for the guidance of others . . . is subject to liability for pecuniary loss caused by justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.'" *Farm Credit Servs. of Am. v. Haun*, *FLCA*, 734 F.3d 800, 805 (8th Cir. 2013). Whether a

7

party's reliance upon a misrepresentation was reasonable is a question of fact. *Neb. Nutrients, Inc. v. Shepherd*, 626 N.W.2d 472, 496 (Neb. 2001). Misrepresentation claims are "a subspecies of fraud," and "a party must state with particularity the circumstances constituting fraud" under Federal Rule of Civil Procedure 9(b). *Id.* (quoting *Farr v. Designer Phosphate & Premix Int'l, Inc.*, 570 N.W.2d 320, 326 (Neb. 1997)).

### 2. Discussion

The allegations of the First Amended Complaint are also sufficient, at this stage of the proceedings, to state a claim for fraud and negligent misrepresentation against defendants Bitters and Boland.[3] The Estate alleges Bitters told the decedent the loan to Henry was a better investment than annuities and alleged the time and place the statements were made. The Estate sufficiently alleges the specifics of the allegedly fraudulent conduct and adequately puts the defendants on notice of the claims and the grounds on which they rest.

### D. Breach of Contract/Assumpsit
#### 1. Law

To state a claim for breach of contract under Nebraska law, a plaintiff must plead facts showing "the existence of a promise, its breach, damage, and compliance with the conditions precedent which activate the defendant's duty." *Dep't of Banking & Fin. of Neb. v. Wilken*, 352 N.W.2d 145, 147 (Neb. 1984). To create a contract, there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract. *City of Scottsbluff v. Waste Connections of Nebraska, Inc.*, 809 N.W.2d 725, 740 (Neb. 2011). A binding mutual understanding sufficient to establish a contract requires no precise formality or express utterance from the parties about the details of the proposed agreement; it may be implied

---

[3]There are no allegations of negligence, breach of fiduciary duty, or fraud that relate to Henry. Henry can be liable for the other defendants' allegedly wrongful acts only if he was part of a civil conspiracy to commit those acts. As discussed below, the plaintiff has not alleged sufficient facts to state a RICO conspiracy claim.

8

from the parties' conduct and the surrounding circumstances. *Id.* At the pleading stage, a plaintiff who fails to point to an identifiable contractual promise that the defendants did not honor has not alleged a contract claim that plausibly entitles it to relief. *Doe v. Bd. of Regents of Univ. of Neb.*, 788 N.W.2d 264, 295 (Neb. 2010). The implied duty or covenant of good faith and fair dealing exists in every contract. *Farm Credit Servs. of Am., FLCA v. Haun*, 734 F.3d 800, 805 (8th Cir. 2013).

To recover for assumpsit, which is also referred to as an action for money had and received, a plaintiff must show the defendant: (1) received money; (2) retained possession of the money; and (3) in justice and fairness ought to pay the money to the plaintiff. *Abante, LLC v. Premier Fighter, L.L.C.*, 836 N.W.2d 374, 379 (Neb. Ct. App. 2013). An action in assumpsit for money had and received may be brought where a party has received money that in equity and good conscience should be repaid to another. *City of Scottsbluff*, 809 N.W.2d at 739. In such a circumstance, the law implies a promise on the part of the person who received the money to reimburse the payor in order to prevent unjust enrichment. *Id.* When a party uses an assumpsit action in this sense, it is a quasi-contract claim sounding in restitution. *Id.* Restitution is predominantly the law of unjust enrichment. *Id.*

### 2. Discussion

The Court finds the Estate adequately states a claim for breach of contract against Henry in connection with the promissory note (the only apparent breach-of-contract claim against Henry). It alleges Henry promised to repay the loan, did not do so and thereby damaged the Estate. Bitters and Boland were not parties to the promissory note, nor are they alleged to have breached it.

With respect to Bitters and Boland, the Estate's allegation that Bitters breached an oral or written contract for investment advice and services with the decedent, taken as true, is sufficient to withstand the defendants' Rule 12(b)(6) challenge. Again, Boland is implicated by virtue of his alleged partnership with Bitters. The Court can draw the

reasonable inference that a contractual relationship existed given the parties' alleged conduct. Bitters allegedly imparted investment advice and the decedent followed it. The Estate's claims for breach of implied duties of good faith and fair dealing are subsumed within its breach-of-contract claims.

The Estate also alleges facts sufficient to state a claim for assumpsit against all of the defendants. It alleges that the defendants received money, retained possession of the money, and in justice and fairness, ought to pay the money to the plaintiff. The Estate's allegations, taken as true, state a plausible claim under Nebraska law.

### E.   NUDTPA/NCPA
#### 1.   Law

The NUDTPA provides that a person engages in a deceptive trade practice when he or she uses any "scheme or device to defraud by means of . . . [o]btaining money or property by knowingly false or fraudulent pretenses, representations, or promises." Neb. Rev. Stat. § 87-302(a)(15)(i). The Act provides for injunctive relief, but provides no private right of action for damages. *See Stenberg v. Consumer's Choice Foods, Inc.*, 755 N.W.2d 583, 587 (Neb. 2008); *Reinbrecht v. Walgreen Co.*, 742 N.W.2d 243, 247 (Neb. Ct. App. 2007). Nebraska courts routinely dismiss a plaintiff's claims under the NUDTPA if the complaint fails to seek injunctive relief. *Reinbrecht,* 742 N.W.2d at 247-48 (dismissing a plaintiff's claim "because he had not alleged or proved the likelihood of future harm sufficient to assert a viable claim for injunctive relief.").

The NCPA, Neb. Rev. Stat. § 59-1602, makes "[u]nfair methods of competition and unfair deceptive acts or practices in the conduct of any trade or commerce" unlawful. Neb. Rev. Stat. § 59-1602. To prove a violation of the NCPA a plaintiff must show: (1) the defendant engaged in an act or practice that constitutes an unfair method of competition or a deceptive trade practice in the conduct of any trade or commerce; (2) the defendant's conduct affected the public interest; (3) the plaintiff was injured in its business or property by the defendant's deceptive trade practice; and (4) the plaintiff

10

suffered damages. *WWP, Inc. v. Wounded Warriors Family Support, Inc.*, 628 F.3d 1032, 1042 (8th Cir. 2011); *Arthur v. Microsoft Corp.*, 676 N.W.2d 29, 36 (Neb. 2004) (holding that for a claim to be actionable under the NCPA, "the unfair or deceptive act or practice must have an impact upon the public interest"). The NCPA does not apply to "isolated transactions between individuals that have no impact on consumers at large. *Arthur*, 676 N.W.2d at 36. At the other end of the spectrum are cases alleging "a pattern of calculated conduct intended to defraud numerous citizens of this state." *Eicher v. Mid Amer. Fin. Inv. Corp.*, 748 N.W.2d 1, 12 (Neb. 2008). "[T]he [NCPA] is not available to redress a private wrong where the public interest is unaffected." *Arthur*, 676 N.W.2d at 36.

### 2. Discussion

The Court finds the plaintiff's allegations are not sufficient to state a claim for violations of the NUDTPA. The allegations in the Estate's First Amended Complaint are attempts to "redress a private wrong" and are not sufficient to support the proposition that the public interest is affected. Accordingly, the Estate's First Amended Complaint fails to state a claim for violations of the NUDTPA, and that claim will be dismissed against all defendants.

Further, though the Estate prays for injunctive relief, the allegations of the First Amended Complaint indicate the Estate seeks only damages for a past violation; there are no allegations that any future harm is at issue. Because there is no private right of action for damages under the NCPA, the Estate's NCPA claim will also be dismissed against all defendants.

## F. RICO
### 1. Law

RICO prohibits "any person employed by or associated with any enterprise engaged in . . . interstate . . . commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

18 U.S.C. § 1962(c). A civil claim under "RICO 'does not cover all instances of wrongdoing. Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity.'" *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011) (quoting *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006)). To establish a civil claim for damages under RICO, a plaintiff must prove the defendant engaged in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 428 (8th Cir. 2009) (quoting *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). The requirements of § 1962(c) must be established as to each individual defendant and a plaintiff's failure to establish any one element of a RICO claim means the whole claim fails. *Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.,* 528 F.3d 1001, 1027 (8th Cir. 2008).

"The particularity requirements of Rule 9(b) apply to allegations of . . . fraud . . . when used as predicate acts for a RICO claim." *Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1069 (8th Cir. 1995). "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule. *Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc*., 61 F.3d 639, 644 (8th Cir. 1995). "When pled as RICO predicate acts, mail and wire fraud require a showing of: (1) a plan or scheme to defraud, (2) intent to defraud, (3) reasonable foreseeability that the mail or wires will be used, and (4) actual use of the mail or wires to further the scheme." *Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 406–07 (8th Cir. 1999). "[T]he term 'scheme to defraud' connotes some degree of planning by the perpetrator, [and] it is essential that the evidence show the defendant entertained an intent to defraud." *Atlas Pile Driving Co. v. DiCon Fin. Co*., 886 F.2d 986, 991 (8th Cir. 1989). Acts and omissions such as breach of contract and breach of fiduciary duty are insufficient to establish RICO liability. *See Manion v. Freund*, 967 F.2d 1183, 1186 (8th Cir. 1992) (involving breach of fiduciary duty); *Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 791 (1st Cir. 1990) (involving a breach of contract). A RICO enterprise "must have a common or shared purpose, some continuity of personnel, and an

ascertainable structure distinct from the pattern of racketeering." *Asa-Brandt, Inc. v. ADM Investor Servs., Inc.*, 344 F.3d 738, 753 (8th Cir. 2003).

A pattern of racketeering is shown through two or more related acts of racketeering activity that amount to or pose a threat of continued criminal activity. *Crest Const. II*, 660 F.3d at 356. To satisfy RICO's continuity element, a plaintiff must allege multiple predicate acts occurring over a substantial period of time or allege facts showing that the predicate acts threaten to extend into the future. *Id.* Civil RICO claims are subject to a four-year statute of limitations. *Agency Holding Corp. v. Mallei-Duff & Assocs., Inc*., 483 U.S. 143, 156 (1987).

### 2. Discussion

With respect to the Estate's claim for RICO violations, the Estate has failed to allege the predicate acts of mail and wire fraud with sufficient particularity to withstand a Rule 12(b)(6) challenge. Though the First Amended Complaint may contain sufficient allegations of common law fraud, it does not allege a fraudulent scheme involving repeated instances, planning, and intent so as to amount to a RICO claim. The factual allegations, even with reasonable inferences drawn in the Estate's favor, do not describe organized, long-term, habitual criminal activity. Also, although the plaintiff alleges fraudulent conduct with respect to another investor, those allegations do not suggest the sort of multiple predicate acts that occur over a substantial period of time or threaten to extend into the future that amount to a pattern of racketeering activity. Also, the Estate's First Amended Complaint lacks sufficient allegations of an ongoing enterprise to trigger RICO liability.

### G. Statutes of Limitations/Equitable Estoppel
#### 1. Law

"A period of limitations begins to run upon the violation of a legal right, that is, when the aggrieved party has the right to institute and maintain suit." *Reinke Mfg. Co. v. Hayes*, 590 N.W.2d 380, 389 (Neb. 1999) (citations omitted). A "cause of action in

13

contract accrues at the time of the breach or failure to do the thing that is the subject of the agreement, irrespective of any knowledge on the part of the plaintiff or of any actual injury occasioned to him or her." *Cavanaugh v. City of Omaha*, 580 N.W.2d 541, 544 (Neb. 1998); *see* Neb. Rev. Stat. § 25-205(1).

Which statute of limitations applies is a question of law. *Parks v. Merrill, Lynch, Pierce, Fenner & Smith*, 684 N.W.2d 543, 549 (Neb. 2004). The point at which a statute of limitations begins to run must be determined from the facts of each case." *Reinke Mfg. Co.*, 590 N.W.2d at 389–90. The issue as to when the statute of limitations begins to run is a question of law only if the facts are undisputed. *See id.* at 390.

In Nebraska, actions for negligence, fraud, and breach of an oral contract must be brought within four years. Neb. Rev. Stat. §§ 25-206, 25-207. With certain exceptions not applicable here, an action for relief on the ground of fraud is not "deemed to have accrued until the discovery of the fraud." Neb. Rev. Stat. § 25-207(4). Absent a more specific statute, actions on written contracts may be brought within five years pursuant to Nebraska Revised Statutes § 25–205. *Reinke Mfg. Co.*, 590 N.W.2d at 387. If a promissory note is a negotiable instrument, the six-year statute of limitations provided in Nebraska's Uniform Commercial Code is applicable; if it is not a negotiable instrument, the five-year statute of limitations for actions on written contracts is applicable.[4]

---

[4]The Uniform Commercial Code is applicable only to negotiable instruments. *In re Estate of Young v. Phillip*, No. A-96-423, 1997 WL 426191, at *8 (Neb. Ct. App. July 1, 1997). See Neb. § U.C.C. 3-102(a) (Reissue 1992). An "instrument" is either a "promise," which is a written undertaking to pay money signed by the person undertaking to pay, Neb. Rev. Stat. U.C.C. § 3-103(a)(9), or an "order," which is a written instruction to pay money signed by the person giving the instruction, Neb. Rev. Stat. § 3-103(a)(6). Nebraska Revised Statutes U.C.C. § 3-104 provides that an instrument is negotiable if the following requirements are met: (1) the promise or order must be unconditional; (2) the amount of money must be "a fixed amount . . . with or without interest or other charges described in the promise or order;" and (3) the promise or order must be "payable to bearer or to order." Neb. Rev. Stat. U.C.C. § 3-104(a). The language regarding "payable to bearer or to order" is defined in Neb. Rev. Stat. U.C.C. § 3-109. *In re Estate of Young*, No. A-96-423, 1997 WL 426191, at *8.

*Emerson v. Zagurski*, 531 N.W.2d 237, 241 (Neb. 1995); Neb. Rev. Stat. U.C.C. § 3-118; Neb. Rev. Stat. § 25-205; *see also Fales v. Norine,* 644 N.W.2d 513, 521 (Neb. 2002).

Nebraska Revised Statutes § 25–222 is a special statute of limitations for professional negligence. *Reinke Mfg. Co.*, 590 N.W.2d at 387. A special statute of limitations controls and takes precedence over a general statute of limitations. *Id.* In determining whether the special statute of limitations for professional negligence applies to a plaintiff's claim, a court must determine whether the defendant is a professional and was acting in a professional capacity in rendering the service on which the claim is based. *Parks*, 684 N.W.2d at 549. The Nebraska Legislature has not specifically stated which occupations are governed by § 25-222. *Id.* The Nebraska Supreme Court, however, has determined that doctors, lawyers, accountants, medical technicians, physical therapists and certain investment advisors are professionals for purposes of the statute of limitations described in § 25–222. *Churchill v. Columbus Comm. Hosp.*, 830 N.W.2d 53, 57 (Neb. 2013); *see also Bixenmann v. Dickinson Land Surveyors, Inc.*, 882 N.W.2d 910, 916 (Neb. 2013) (finding registered surveyors are professionals); *but see Jorgensen v. State Nat. Bank & Trust*, 583 N.W.2d 331, 335 (1998) (finding bank employees, even if characterized as "retirement planners," were not professionals); *Tylle v. Zoucha*, 412 N.W.2d 438, 440 (Neb. 1987) (finding real estate brokers are not professionals).

The professional negligence statute of limitations provides a two-year limitations period for actions, whether pled in contract or tort, based on a professional relationship. *Jorgensen 583 N.W.2d* at 388; *see* Neb. Rev. Stat. § 25-222. That statute also provides that "if the cause of action is not discovered and could not be reasonably discovered within such two-year period, then the action may be commenced within one year from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier." Neb. Rev. Stat. § 25-222. In the context of statutes of limitations, "'discovery' refers to the fact that one knows of the existence of an injury or damage, regardless of whether there is awareness of a legal right to seek redress

in court." *Reinke Mfg. Co.*, 590 N.W.2d at 390 (quoting *Weaver v. Cheung*, 254 576 N.W.2d 773, 778 (Neb. 1998)). A continuous relationship may toll the statute of limitations but requires that there is continuity of the relationship and services for the same or a related subject matter after the alleged professional negligence. *Id.* at 391.

The elements of equitable estoppel are, as to the party estopped: (1) conduct that amounts to a false representation or concealment of material facts, or at least which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. *Olsen v. Olsen*, 657 N.W.2d 1, 9 (Neb. 2003). As to the other party, the elements are: (1) lack of knowledge of and means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his or her injury, detriment, or prejudice. *Id.* "The first prong of this test is met when one lulls his or her adversary into a false sense of security, thereby causing that person to subject his or her claim to the bar of the statute of limitations, and then pleads the very delay caused by his or her conduct as a defense to the action when it is filed." *Id.*

### 2. Discussion

With respect to the defendants' statutes-of-limitations defenses, the Court finds that it is not clear on the face of the First Amended Complaint that the Estate's claims are barred by the applicable statutes, even though such defenses may eventually have merit. There are numerous issues of underlying fact to be explored before the Court can determine as a matter of law which statutes are applicable, when the claims accrued, and whether tolling or equitable estoppel are appropriate. For example, on the face of the pleading, the Court is unable to determine the nature of the promissory note, the

relationship—whether fiduciary or professional—between the decedent and the defendants, the nature and extent of the defendants' duties, the status of Bitters and Boland as professionals, the point at which the Estate discovered or should have discovered any misfeasance, whether the defendants lulled the decedent or the Estate plaintiff into inaction, or whether there was continuity in the relationship so as to toll the limitations period. All of these issues require further factual development. The Court thus finds the defendants' motions to dismiss based on the statute of limitations should be denied at this time. Accordingly,

IT IS ORDERED:

1. Defendant William E. Bitters's Amended Motion to Dismiss (Filing No. 104) is GRANTED with respect to the Estate's NUDTPA, NCPA, and RICO claims and DENIED in all other respects.

2. Defendant Robert W. Boland, Jr.'s Amended Motion to Dismiss (Filing No. 106) is GRANTED with respect to the Estate's NUDTPA, NCPA, and RICO claims and DENIED in all other respects.

3. Defendant John Henry's Motion to Dismiss the plaintiff's breach-of-contract claim (Filing No. 112) is DENIED.

4. The Estate's claims for violations of the NUDTPA, NCPA, and RICO are dismissed, without prejudice.

5. Defendant John L. Henry's Motion for Cease and Desist Order (Filing No. 111) and Motion to Surpress [sic] and Request for Sanctions (Filing No. 120) are DENIED.

6. Defendants Bitters and Boland shall file an answer or otherwise plead within fourteen (14) days of the date of this order.

Dated this 19th day of October, 2016.

BY THE COURT:

s/ *Robert F. Rossiter, Jr.*
United States District Judge