IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ESTATE OF JOYCE ROSAMOND PETERSEN, deceased;<br><br>Plaintiff,<br><br>vs.<br><br>WILLIAM E. BITTERS, ROBERT W. BOLAND JR., JOHN L. HENRY, and UNITED FINANCIAL SERVICES,<br><br>Defendants. | **8:16CV183**<br><br>**MEMORANDUM AND ORDER** |

Plaintiff has moved to compel responses to deposition questions posed to Defendant Boland, for sanctions, for an order permitting a second deposition, for an opportunity to file supplemental responses to Defendants' motions for summary judgment, and to continue the trial. ([Filing No. 208](#)).

Boland's deposition was taken on April 16, 2018—the last day for taking that deposition. During the deposition, counsel contacted my chambers to discuss ongoing problems, but I was unavailable until mid-afternoon. Counsel then spoke with Judge Rossiter, who advised Plaintiff's counsel to bring the issues before me for resolution. Plaintiff's counsel then waited over five weeks to file a motion, along with his 55-page brief and a request to continue the trial because of the pending discovery disputes.

When Plaintiff's motion was filed, the pretrial conference was scheduled to be held on June 12, 2018, with trial set for June 25, 2018. Absent a deviation from the local rules, (see NEGen R. 1.1(c)), Plaintiff's motion would not be fully

submitted prior to the pretrial conference. The court therefore entered an expedited briefing schedule. The motion is fully submitted.

As the following explains, the discovery and sanctions issues raised in Plaintiff's motion, ([Filing No. 208](#)), will be denied. That portion of Filing 208 which requests a Rule 56(d) continuance will be addressed by Judge Rossiter.

## ANALYSIS

During Boland's deposition, Plaintiff's counsel designated the following deposition lines and pages for the court's review: 10:5; 26:14; 39:8; 40:24; 41:20; 43:13; 47:10; 47:24; 48:8; 68:13; 76:1; 138:15; 146:1; & 150:14. ([Filing No. 209-1, at CM/ECF p. 5](#)). Gaudet further argues that Zarghouni improperly coached Boland during the deposition, obstructed the deposition with threats and speaking objections, and terminated the deposition before Gaudet's questioning was complete.

### A. **Designated Deposition Questions and Improper Coaching**.

Line 10:5

Gaudet asked Boland "You don't know what UFIS, Inc., is?" Boland answered, "No." ([Filing No. 209-1, at CM/ECF p. 11, at lines 8:2-4](#)). When Boland later stated that he knew nothing about that entity, Gaudet asked how Boland knew it was an entity. When the Boland responded that Gaudet used "Inc." as part of the USIF's name, indicating it was a corporation, Gaudet erroneously denied using "Inc." to describe or name UFIS, and then went on for three pages asking Boland about USIF's ownership, directors, employees, etc.

2

As part of this line of questioning, Gaudet asked Boland about UFIS's source of income. Zarghouni objected as to "form. Asked and answered. He has no idea what that entity is." Gaudet claims this objection was improper coaching. ([Filing No. 209, at CM/ECF p. 16](#)).

Read in context, Zarghouni's comment that Boland "has no idea what that entity is" was not coaching, but rather an attempt to protect the witness from repetitive questions for which Boland lacked foundation. Once Boland stated he knew nothing about UFIS, the remaining questions about that entity were pointless, asked and answered, and harassing. Zarghouni's objection as to asked and answered and harassment is sustained.

Line 26:14

Gaudet asked Boland to explain why he failed to produce receipts for a business trip Boland made to South Dakota in 2015 to speak with potential clients. Those clients are wholly unrelated to the promissory note at issue in this case. Zarghouni objected as to form, and he asked Gaudet to explain why the question was relevant. Gaudet then purported to instruct Zarghouni on how depositions work, claiming Zarghouni cannot ask opposing counsel to clarify how a specific line of questioning is relevant.

Zarghouni did not instruct Boland not to answer the questions, and Gaudet did not explain how the questions were relevant. Instead, Gaudet contacted my chambers for assistance. Since I was not available to take the parties' call, Gaudet continued his questioning on the South Dakota receipt issue, and Boland answered the questions.

3

Contrary to Gaudet's argument, Zarghouni was not obstructing the deposition when he asked Gaudet to explain how Boland's receipts from a 2015 trip to South Dakota are relevant to above-captioned lawsuit. The court is not, and cannot be, an on-call referee to resolve discovery disagreements. A judge is not always available. As such, counsel are encouraged to confer as professionals acting in good faith regarding disputes over discovery requests and objections. This principle applies to not only written discovery, but also depositions.

Since the above-captioned action arises from a 2008 transaction involving entirely different people, the relevance of Gaudet's questions regarding Boland's 2015 trip receipts was highly suspect. Zarghouni did not act improperly by initiating a dialogue to understand how Gaudet's questions could be relevant to the issues being litigated.

Line 39:8; Line 40:24; Line 41:20; Line 43:13

Gaudet asked for the name of a potential client Boland met in Omaha in March of 2018 based on a referral from Bitters. Boland responded that he was not going to disclose the name of this potential business client, and he refused to answer the question. (Filing No. 209-1, at CM/ECF pp. 41, 44, lines 38:14-39; 41:20). Zarghouni objected on attorney-client privilege.

Boland met with the potential clients on two afternoons in March of 2018. When Boland could not recall the specific dates of those meetings, Gaudet asked if Boland's calendar in his office down the hall would assist in answering the question. Zarghouni instructed Boland not to go to his office to review the calendar. (Filing No. 209-1, at CM/ECF p. 43, lines 40:24). Bitters introduced Boland to the

potential client prior to the first meeting, but he was not present at the meeting itself. Boland discussed confidential information with the client regarding legal work Boland could provide on the client's behalf. Bitters attended the meeting with the client on the second day. Boland refused to answer whether the client paid a retainer to Boland. Zarghouni objected on attorney-client privilege, instructing Boland not to answer the question. Boland did not answer the question. ([Filing No. 209-1, at CM/ECF pp. 46, lines 42:17-43:18](#)).

The attorney-client privilege protects confidential disclosures made by a client to an attorney to obtain legal representation, but it generally does not apply to client identity and fee information. [United States v. Sindel, 53 F.3d 874, 876 (8th Cir. 1995)](#). However, the privilege protects even client identity if in the context of other information already known, revealing the identity would necessarily disclose confidential communications; that is, the client's identity was the "last link" in disclosing confidential communications imparted during attorney-client communications. [Sindel, 53 F.3d at 876](#).

The only explanation provided for not disclosing the identity of Boland's client occurred during counsel's conversation with Judge Rossiter. Zarghouni explained that Boland's potential client "is a well-known person and currently involved in a major audit, and he did not want to disclose his identity." ([Filing No. 209-1, at CM/ECF p. 9, lines 87:20-22](#)). This limited record does not support a finding that the identity of Boland's March 2018 client contact, and whether that potential client ever paid a retainer, was privileged information. Instructing Boland not to answer based on the attorney-client privilege was not proper.

But it was also not sanctionable. The Federal Rules of Civil Procedure, including those rules governing the imposition of sanctions, must be construed and

administered to secure the just, speedy, and inexpensive determination of every action. Fed. R. Civ. P 1. Here, Plaintiff's counsel states he was asking questions to discover whether Bitters and Boland were partners, or implied partners, regarding the loan Plaintiff extended to Defendant Henry and alleged financial reports and representations to Plaintiff regarding payments on that loan. (Filing No. 209, at CM/ECF pp. 50-53). The promissory note at issue was signed on February 14, 2008. (Filing No. 99, at CM/ECF p. 5, lines 5-7). Plaintiff passed away on October 20, 2013. (Filing No. 99, at CM/ECF p. 2, lines 6-7). While Plaintiff's complaint alleges that "[a]s the sole legal officer in his partnership with Bitters, Boland knew or should have known about the account statements that Bitters issued through their partnership to Ms. Peterson and other investors," (Filing No. 99, at CM/ECF p. 10-11, ¶35), Boland did not know Bitters prior to 2012, (Filing No. 209-1, at CM/ECF p. 15, lines 12:13-22), and never knew Plaintiff or Defendant Henry–the parties to the promissory note at issue. (Filing No. 209-1, at CM/ECF p. 157, lines 154:11-13).

As to the deposition questions at issue, Boland's meeting with a prospective client in Omaha three months ago is not relevant to the claims presented in this litigation. "Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992).

And even if assumed to be marginally relevant for the purposes of discovery only, asking Boland to identify a prospective client he met with in 2018, to review his office calendar to determine the specific dates of those meetings, and to state whether he received a retainer fee—and certainly permitting any new deposition to obtain answers—is highly disproportionate to the needs of the case and the

issues being litigated. (Fed. R. Civ. P 26(b)(1)). This is particularly true where Plaintiff's counsel has been litigating for over three years and has already billed Plaintiff's estate more than $100,000 in attorney fees to recover on a $150,000 promissory note.

Gaudet argues Zarghouni improperly instructed Boland not to review his office calendar to answer Gaudet's questions regarding the dates of Boland's March 2018 meetings with the Omaha prospective client. Gaudet is incorrect. Boland was not a Rule 30(b)(6) witness. As such, he was not <u>required</u> to prepare for the deposition, and he not <u>required</u> to review any documents before or during the deposition to provide answers. Moreover, once a document is reviewed during a deposition to refresh recollection, any privilege as to the document—or at least the document portion reviewed—is generally deemed waived. Napolitano v. Omaha Airport Auth., 2009 WL 1393392, at *4 (D. Neb. May 11, 2009). Boland was not required to encounter that risk by reviewing his office calendar during the deposition—particularly to provide dates which are not relevant to this case. Zarghouni did not violate the discovery rules by instructing Boland not to review the calendar.

<u>Line 47:10</u>; <u>Line 47:24</u>

Gaudet asked Boland to disclose how Bitters knew the prospective clients he referred to Boland. Zarghouni objected to the form of the question as speculative. That objection was correct and is sustained.

Gaudet asked Boland to disclose the total fees earned from Bitters' referrals. Boland refused to answer, stating it was none of Gaudet's business.

7

Since any fees generated from Bitters' referrals must have been generated no earlier than the 2012 timeframe, and the alleged acts of Bitters and Henry at issue in this case occurred before that, Boland is correct. The question was irrelevant. Boland was not required to the respond to questions posed to unreasonably annoy him. Fed. R. Civ. P. 30(c)(2) and (d)(3).

Line 48:8

Gaudet asked Boland to disclose the nature of legal services provided to the four or five clients referred to Boland by Bitters. Zarghouni objected on the basis of attorney-client privilege and instructed Boland not to answer. Boland followed the instruction. Gaudet claims he is entitled to an answer. The court is not convinced. First, a description of legal services provided to a client could include privileged attorney-client communications, and the instruction not to answer was not improper. Second, as previously explained, the answer is not relevant or proportional to the needs and issues in this case.

Line 68:13

The following deposition questioning occurred:

Q: Did you write the biography in the form in which it appeared on [Bitters'] website?
MR. ZARGHOUNI: Objection, form. Which form? Can you please explain? It's a vague question.
MR. GAUDET: Would you please mark that improper objection, Gary?
THE WITNESS: You want me to answer?
BY MR. GAUDET:

> Q: Yes.
> 
> A: I did not write a biography for his website, no.
> 
> Q: Who wrote the biography that appeared on his website?
> 
> A: I have no idea.
> 
> Q: Did he ever tell you?
> 
> A: No.

([Filing No. 209-1, at CM/ECF p. 71, lines 68:9-24](#)). Zarghouni's objection was succinct, nonargumentative, and nonsuggestive. It was not an improper objection. [Fed. R. Civ. P. 30(c)(2)](#). Moreover, Boland answered the question. The objection at Line 68:13 of the deposition cannot provide a basis for sanctions or a second deposition.

<u>Line 76:1; Line 143:17</u>

The four pages of dialogue beginning at page 75, and the six pages beginning at page 143 of the deposition exemplify why management of this case has been and remains a challenge. Zarghouni's comments and instructions—even instructions directed to Gaudet—are not a basis for imposing sanctions in favor of Plaintiff. Zarghouni defended himself and his client. He did not unreasonably impede, delay, or frustrate the questioning of Boland.

<u>Line 138:15</u>

The following deposition questioning occurred:

Q: So why is Matthew Zarghouni on your monthly calls with Bitters if you're not even talking about the subject of this lawsuit?

MR. ZARGHOUNI: Objection, form, attorney-client privilege. Do not answer that.

9

BY MR. GAUDET:

Q: Are you refusing to answer that question --

A: Yes.

MR. ZARGHOUNI: Yes.

BY MR. GAUDET:

Q: -- based on Mr. Zarghouni's statement?

A: Yes.

MR. ZARGHOUNI: Yes.

Considered in the context of the deposition, asking why Zarghouni was conferring with Bitters and Boland on matters unrelated to this lawsuit may call for disclosure of confidential attorney-client discussions, and on matters not relevant to this case. The objection was not improper.

Line 143:1; 146:1; Line 150:14

Plaintiff's counsel asked questions about perceived deficiencies in Boland's affidavit response to discovery. During this questioning, Zarghouni directed Boland to paragraphs of the affidavit for review before responding to questions about its content. Gaudet argues this this conduct was improper coaching. ([Filing No. 209, at CM/ECF p. 18](#)). The court disagrees.

Depositions must be conducted in a manner that garners truthful information; in this case, identifying and explaining alleged misinformation or omissions within the deponent's own affidavit. Allowing a party to review the document being discussed, and allowing counsel to assist in locating the portions of an affidavit being challenged during the questioning, promotes that goal.

As to the actual content of the affidavit, Boland refused to state whether he provided his licenses from 2007, 2008 to Zarghouni as required under the court's order. That refusal was improper—but since Boland had no contact with Bitters before 2012, the question was relevant solely to show Boland violated my prior order. Based on the information the court now knows, the 2007 and 2008 licensing information is irrelevant. The court will not require a second deposition to answer questions on this topic.

Boland was asked why he did not provide a detailed explanation of his professional relationship with Bitters as required under the court's order. Boland did not answer the question. Zarghouni instructed Boland not to answer any more questions, advising Gaudet, "If you don't like the answer that was provided in the affidavit, take it back to the Court." ([Filing No. 209-1, at CM/ECF p. 155, lines 152:11-14](); see also [Filing No. 209-1, at CM/ECF p. 152, lines 149:21-23]()).

Even absent a video or audio recording of the tone and atmosphere of this deposition, based solely on reading the lines of the written transcript, the court is convinced that this deposition was unnecessarily antagonistic. A party is entitled to object and terminate a deposition when taken in a manner that unreasonably annoys or oppresses a party or deponent. [Fed. R. Civ. P. 30(c)(2) and (d)(3)(A)](). Boland, acting on his own behalf and at the instruction of counsel, did that. The court will not impose sanctions against Boland or Zarghouni for threatening to stop the deposition.

And the deposition did not really end. Boland thereafter answered additional direct, cross, and redirect questions.

### B. Early Termination of the Deposition.

Gaudet argues Zarghouni terminated deposition early by announcing, without notice, his need to leave at 2:00 p.m. During the deposition, Gaudet protested that he was entitled to depose Boland for seven hours. But he completed his deposition questioning before 1:30 p.m., without reserving the right to ask additional questions. ([Filing No. 209-1, at CM/ECF p 156, lines 153:10-13](#)) ("I think we have concluded with the deposition. I understand Mr. Zarghouni doesn't have any questions of his own. I'm finished") & [p. 158, lines 155: 19-20](#) ("Thank you, Mr. Boland. I don't have any further questions.")). As such, any argument that Zarghouni acted improperly by setting a 2:00 p.m. deadline for completing Boland's deposition is moot.

### C. Evasive Responses.

Gaudet argues Boland was evasive and non-cooperative because he did not answer questions, stated some requested information (total income received from Bitters' referrals) was "not readily available," and claimed he did not understand the word "substantial." ([Filing No. 209, at CM/ECF p. 25](#)). As to the word "substantial," Boland's deposition includes the following:

> Q: But you did receive some income from referrals from Bitters, correct?
> A: Yes.
> Q: Was it substantial?
> THE WITNESS: I don't know what you mean by "substantial."

([Filing No. 209-1, at CM/ECF pp 55-56, lines 52:21-53:2](#)). Assuming "substantial" was defined as relative to the work being performed, Boland answered that he did

not receive substantial income from Bitters' referrals. ([Filing No. 209-1, at CM/ECF pp. 56-57, lines 53:19-54:11](#)).

Gaudet asked a question susceptible to subjective interpretation. Zarghouni objected to the form of the question. Boland asked for clarification before answering, then answered the question. Nothing improper occurred during this line of questioning.

Gaudet claims Boland's responses were evasive because he stated he did not recall how he told Bitters to remove Boland's name from Bitters' website. In a display of exasperation, Boland stated "[i]t could have been by satellite. It could have been by telephone. It could have been by Morse Code." ([Filing No. 209-1, at CM/ECF p. 56, lines 75:8-10](#)). Gaudet interprets the "Morse Code" testimony as evasive at best; untruthful at worst. Neither is the case.

Boland testified that he could not remember how he communicated the instruction to remove his name from Bitters' website. ([Filing No. 209-1, at CM/ECF pp 77-78, lines 74:12-75:4](#)). Gaudet's repeated questioning on this topic frustrated Boland, as exhibited by his obvious sarcasm when responding to the question. This demonstrated frustration does not warrant sanctions or a repeat deposition.

CONCLUSION

The Boland deposition presents a disturbing display of attorney conduct—none of which promotes the goal of uncovering the truth. Given that Plaintiff's counsel waited for over five weeks to file this motion, the court is left to wonder whether it was filed to obtain unanswered discovery or, in the alternative, to inundate the court and opposing counsel with last minute motion practice in an attempt to either force a trial continuance or create an issue for appeal.

The trial was continued by two weeks. This continuance permitted the court to rule on Plaintiff's motions. Under the circumstances presented, Plaintiff will not be awarded sanctions as requested in the Filing 208 motion.

Accordingly,

IT IS ORDERED that Plaintiff's motion, ([Filing No. 208](#)), is denied, in part, and referred to Judge Rossiter for ruling, in part, as follows:

1) Plaintiff's motion to compel responses to deposition questions posed to Defendant Boland, for sanctions, and for an order permitting a second deposition of Boland, is denied.

2) Plaintiff's motion to file supplemental responses to Defendants' motions for summary judgment under Rule 56(d) will be ruled on by Judge Rossiter.

3) Plaintiff's motion to continue the trial is denied as moot. The court has already continued the trial to commence on July 9, 2018, with the pretrial conference to be held on June 26, 2018. ([Filing No. 217](#)).

June 20, 2018.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge