IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ESTATE OF JOYCE ROSAMOND PETERSEN, deceased;<br><br>Plaintiff,<br><br>vs.<br><br>WILLIAM E. BITTERS, ROBERT W. BOLAND JR., JOHN L. HENRY, and UNITED FINANCIAL SERVICES,<br><br>Defendants. | 8:16CV183<br><br>**MEMORANDUM AND ORDER** |

Plaintiff has moved for an order 1) granting sanctions and adverse inferences against Defendants William Bitters and Robert W. Boland and their counsel for non-compliance with the court's discovery order; 2) striking their affirmative defenses and allegations; 3) granting a Rule 56(d) continuance for responding to their motions for summary judgment; and 4) extending the case progression schedule and trial date by 90 days. ([Filing No. 215](#)).

Plaintiff's motion was filed on June 5, 2018. The pretrial conference was scheduled to be held on June 12, 2018, with trial set for June 25, 2018. Absent a deviation from the local rules, (see NEGen R. 1.1(c)), Plaintiff's motion would not be fully submitted prior to the pretrial conference. The court therefore continued the pretrial conference and trial by two weeks, and it entered an expedited briefing schedule on Plaintiff's motion. ([Filing No. 217](#)). The Filing 215 motion is now fully submitted.

As the following explains, Plaintiff's motion requesting adverse inferences and sanctions, (Filing No. 215), will be denied. That portion of Filing 215 which requests a Rule 56(d) continuance will be addressed by Judge Rossiter.

FACTUAL BACKGROUND

Plaintiff's lawsuit was initially filed in the United States District Court for the Eastern District of Texas on December 1, 2014, and it was transferred to this district on April 25, 2016. (Filing No. 58). The extensive procedural history of this lawsuit was outlined in my prior order, Filing No. 181, which is incorporated herein by reference. That history will be repeated only as necessary to explain the court's ruling on Plaintiff's pending motion.

Based on the parties' proposals as stated in the Rule 26(f) Report, this court entered a final progression order on February 10, 2017, (Filing No. 127), which set a November 1, 2017 written discovery deadline, and a November 30, 2017 deposition deadline. Then Plaintiff waited seven months to begin discovery— serving no written discovery requests until September 19, 2017. At that time, Plaintiff served 34 Requests for Admission, 102 Requests for Production, and 33 Interrogatories on Defendants Bitters and Boland. During a conference call held on October 24, 2017, the case progression deadlines were extended at the parties' request. The written discovery deadline was extended to December 1, 2017, with a deposition deadline of February 9, 2018, with a June 25, 2018 trial setting. (Filing No. 128).

Discovery disputes arose between Plaintiff and all Defendants. As to Defendants Bitters and Boland, the court entered an extensive order on February 5, 2018, which set a March 2, 2018 for serving responses or supplemental

responses as ordered. (Filing No. 160). Defendants Bitters an Boland served discovery responses on March 2, 2018, and supplemental responses on March 6, 2018, (Filing No. 216, at CM/ECF p. 6), and they timely moved for summary judgment on March 20, 2018. (Filing Nos. 182 & 184). They were deposed on April 16, 2018, the deadline for conducting depositions.

The June 25, 2018 trial and June 12, 2018 pretrial conference settings were chosen after conferring with counsel for Plaintiff and Defendants Bitters an Boland. Despite these looming deadlines and the pending summary judgment motions, Plaintiff's counsel waited until June 5, 2018 to file the current motion, (Filing No. 215), and a 103-page supporting brief, therein requesting that the summary judgment rulings and trial be continued pending a ruling on the issue of adverse inferences and sanctions.

The central focus of Plaintiff's arguments is Bitters' (and, to a far lesser extent, Boland's) alleged failure to describe how they searched for responsive documents or answers before responding to the discovery, and Plaintiff's belief that requested documents remain undisclosed and Defendant' answers and responses are therefore untruthful or, at the very least, incomplete.

The court's February 5, 2018 order required Defendants Bitters and Boland to perform a more in-depth search for information responsive to Plaintiff's discovery requests and provide an affidavit describing those efforts. In the affidavit, they were to explain how they conducted the additional search, including the persons contacted, and whether they searched electronically stored information (ESI), including what was searched; who conducted the search; how it was conducted; and what was found.

Bolands' affidavit states, in essence, that he knows nothing about the transaction underlying this case, so there were no paper or ESI records to search. In addition to providing information relevant to only specific discovery requests, Bitters' affidavit states that as to paper records:

> I recently spent approximately 3 days personally reviewing my paper records, and I located no written communications to or from Joyce Petersen, Bill Skoggins, or John Henry, and I also located no written records or documents pertaining to Joyce Petersen, Bill Skoggins, John Henry, or the promissory note from John Henry to Joyce Petersen among those paper documents in my possession.

([Filing No. 216-2, at CM/ECF p. 12, ¶ 4](#)).

As to ESI, Bitters' affidavit states:

> 22.  I have email accounts through AOL, Hotmail, Yahoo, Gmail. I have not used the Yahoo account for approximately 12 years. I have approximately 7,500 to 8,000 total email messages combined through these accounts, most of which have nothing to do with this case and which may contain sensitive financial information for other clients. I consulted all of my email accounts using specific search terms in an attempt to identify communications relevant to this case and responsive to Plaintiff's discovery requests.
>
> 23.  I first performed a search across all of my email accounts using the search terms "John Henry", "John L. Henry", "JSJ", and "Allianz". None of the searches identified any email communications to or from John Henry. However, I did identify communications from Allianz which contained as attachments documents pertaining to John Henry, and these documents have been produced herein. I have no written or electronic communications, and have never had any written or electronic communications, to or from John Henry regarding the promissory note.
>
> 24.  I also performed a search of my email accounts using "Joyce Petersen", "Joyce Scoggins", "Petersen-Scoggins", "Petersen Scoggins", and "Joyce Peterson" as search terms. This search

4

uncovered two email messages from Sharon Miller, Joyce Petersen's accountant, both dated April 15, 2013. I also located emails communications with Jilynn Wall dated November 21, 2013 and November 29, 2017. I am producing hard copies of these communications herein.

25. During my search of all of my email accounts, I also searched for any email communications with Robert Boland, and this search identified between 500 to 1000 email messages to and from Robert Boland dating back more than 15 years. However, none of the messages pertained to Joyce Petersen, John Henry, the promissory note, or this lawsuit.

26. I also identified email messages to attorney Aaron Rodenburg, and copies of those email messages are being produced herein.

27. The only other email communications I identified pertaining to John Henry, Joyce Petersen, Clarence Nelson, or the promissory note were between me and my attorneys, Joel Feistner, and Matthew Zarghouni.

([Filing No. 216-2, at CM/ECF pp. 15-16, ¶¶ 22-27](#)).

Plaintiff argues that as to some discovery requests, Bitters' response that no documents were found indicates he did not really look—that had he done what the court ordered him to do, he would have found responsive information. As to some of these requests, Plaintiff argues Bitters failed to reach out to third parties who may have possessed documents. Productions Request 5 (to Bitters) (contacts at Allianz for commission information); Production Request 27 (to Bitters) (his own accountant for business records); Production Request 41 (to Bitters) (same); Production Request 31 (to Bitters and Boland) (subpoena or legal representative request to Verizon for telephone records); Production Request 51 (to Bitters) (no contact with SunLife). (See [Filing No. 216 at CM/ECF pp. 10–11, 15–23, 29–30, 46–48, 86, 89, 90, 91, & 95](#)). As to others, he claims Bitters' computer search was

incomplete because while Bitters' computer was stolen from a hotel room,[1] Bitters did not state whether he searched other storage locations, such as external drives and cloud storage. Interrogatory 12 (to Bitters); Production Request 2 (to Bitters); Production Request 14 (to Bitters); Production Request 21 (to Bitters); Production Request 30 (to Bitters); Production Request 49 (to Bitters). (See [Filing No. 216 at CM/ECF pp. 10–11, 23–25, 31–32, 41, 42, 43, 45–46, 90, 91, & 116](#)). Plaintiff claims Bitters' responses regarding email searches are not credible because had he really searched the emails carefully, he would know how many he exchanged with Boland, rather than merely stating between 500 and 1000. Request for Admission 28 (to Bitters); Production Request 3; 25 (to Bitters) (See [Filing No. 216 at CM/ECF pp. 10–11, 23, 43–45, 88, & 90](#)). Plaintiff's counsel claims Bitters was subject to a litigation hold as early as June of 2015, so the documents should have been in his lawyers' possession—and therefore they are withholding evidence, as well. Production Request 30 (to Bitters). (See [Filing No. 216 at CM/ECF pp. 10–11, 43, & 90](#)).

Plaintiff argues that Bitters' and Boland's responses lack sufficient detail and are therefore incomplete. Interrogatory 3 (to Boland) and Interrogatory 7 (to Bitters) (e.g., how Bitters' and Boland's professional relationship started, what it involves, what each got out of it, and how long it lasted, etc.); Interrogatory 4 (to Bitters) (e.g., when, how, or why investment products were sold to Plaintiff, how Bitters knew Scroggins, how often he served or advised him, how much he made from him in commissions, what advice he gave him, etc.); Interrogatory 10 (e.g., the

---

[1] Plaintiff's counsel claims the statement that the computer was stolen as not credible, but other than possible inconsistencies in dates of when that happened, he has provided no evidence to support this credibility attack. That is, Plaintiff's counsel does not support his assertion that Bitters is lying, despite receiving the police report number and the names of the investigating detectives from Bitters over three months ago. ([Filing No. 216-2, at CM/ECF p. 16](#)).

number of conversations with Henry, whether they took place by phone, and the location of those conversations, etc.), Interrogatory 11 (same); and 18 (e.g., how Bitters met Nelson, how he convinced Nelson to loan the money, how he picked up the check from Nelson, etc.); Production Request 1 (to Bitters) (names of persons contacted to obtain investment documents). (See [Filing No. 216 at CM/ECF pp. 10–11, 27–28, 30–33, 33–36, 39–40, 63, 63–66, 86, & 89](#)). Defendants Bitters and Boland provided responses to Plaintiff, and considered with the affidavits, those responses were sufficiently specific—particularly when supplemented by a later deposition of these defendants.[2]

As to some discovery requests, Plaintiff claims Bitters and Boland provided only a partial response. Production Request 29 (Bitters failed to give his business addresses going back to 2008); Production Request 36 and Interrogatory 6 (Bitters states Strong's current address is unknown, but does not provide the last known address). (See [Filing No. 216 at CM/ECF pp. 55–57, 57–58, & 93–94](#)). For some of the incomplete responses, the information is available of public record. Production Request 37 (to Bitters) (confirmation that Bitters was a licensed and registered broker for the years of 2007 to 2014 and the first four months of 2015); Production Request 38 (Bitters' license to sell annuities); Production Request 37 (to Boland) (lacking information on whether Boland's license to practice law was inactive at any point in time and no disclosure regarding licenses or registrations in Colorado and Missouri). (See [Filing No. 216 at CM/ECF pp. 58–59, 60–63, &](#)

---

[2] Plaintiff's counsel repeatedly complains that Bitters' and Boland's discovery responses also reference their affidavits as a whole, with no reference to which specific paragraphs apply to which specific discovery requests. Bitters' affidavit ([Filing No. 216-2, at CM/ECF pp. 11-17](#)) is only seven pages long; Boland's affidavit ([Filing No. 216-2, at CM/ECF pp. 82-85](#)), is only four pages. The court had no difficulty determining what portions of the affidavits were responsive to which discovery requests.

94). Plaintiff's counsel makes no showing that he tried but failed to obtain the information from public sources.

Some of the discovery at issue seeks information available regarding Plaintiff's accounts, and is therefore available to Plaintiff. Production Request 1 (to Bitters) (statements for investments or annuities held by Plaintiff and managed by Bitters); Production Request 51 (correspondence to SunLife by Bitters regarding Plaintiff's investments). ([Filing No. 216 at CM/ECF pp. 29–30, 33–36, 86, 89, & 95](#)). Plaintiff's counsel makes no showing that he tried but failed to obtain the information as a representative of his own client.

Some of Plaintiff's discovery requests are subject to interpretation, with Bitters and Boland responding in accordance with their interpretation, and Plaintiff's counsel arguing the response does not fully address his interpretation of the request. Interrogatory No. 4 (to Boland) (identity of persons familiar with the allegations within the complaint); Production Request 44 (to Bitters) (funds received from Plaintiff arising from sales of investments); Production Request 46 (to both Bitters and Boland) (documentation of partnership relationship). ([Filing No. 216 at CM/ECF pp. 25–26, 28–29, 66–68, 94, & 95](#)).

Plaintiff claims Bitters improperly redacted pages of documents because certain Bates-stamped pages were blank. Production Request 25; 47 (to Bitters) ([Filing No. 216 at CM/ECF pp. 13, & 68–69](#)). This allegation is fully addressed by Zarghouni's affidavit explaining the copying process, as well as the court's review of an example.

Plaintiff's counsel challenges the credibility of Bitters' responses to Request for Admission 63 and 78, primarily because Henry's affidavit contradicts Bitters'

statements, and Plaintiff's counsel believes Bitters' has not adequately addressed that discrepancy. ([Filing No. 216 at CM/ECF pp. 48-50](#)).

Finally, Plaintiff argues Bitters and Boland did not adequately respond to Plaintiff's interrogatories and requests for documents supporting the defendants' denial of Plaintiff's allegations. Interrogatory 8 (exhibit list) & 14 (to Bitters); Production Request 15 (to Bitters and Boland); Production Request 16-19 (to Bitters). ([Filing No. 216 at CM/ECF pp. 50–51, & 51–55](#)). Plaintiff states Bitters and Boland did not adequately identify which documents they intended to use at trial and who they intend to call as witnesses. Aside from the work product concerns raised by demanding that the opposing party's sort and identify the documents it believes are relevant, the pretrial conference for this case is scheduled for next week. At that time, the parties will need to identify exhibits and witnesses for trial.

## ANALYSIS

Plaintiff argues the court should impose an adverse inference, particularly as it relates to information that could have been located on Bitters' laptop, ([Filing No. 216, at CM/ECF pp. 73-83, 87-95](#)). Plaintiff further requests the court prohibit Bitters and Boland from putting on evidence in support of affirmative defenses, ([Filing No. 216, at CM/ECF pp. 83-87](#)), sanction Bitters, Boland, and their counsel by requiring them to pay the attorney fees incurred in preparing and filing this motion, ([Filing No. 216, at CM/ECF pp. 95-98](#)), and find Bitters and Boland in contempt, ([Filing No. 216, at CM/ECF p. 98-99](#)). These arguments will be discussed in turn.

A.   Adverse Inference.

To impose an adverse inference instruction, a district court must find: 1) intentional destruction indicating a desire to suppress the truth, and 2) prejudice to the opposing party. Hallmark Cards, Inc. v. Murley, 703 F.3d 456, 460 (8th Cir. 2013) (internal quotation omitted). "Intent is rarely proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors." Greyhound Lines, Inc. v. Wade, 485 F.3d 1032, 1035 (8th Cir. 2007) (quotation omitted).

1.   Intentional Destruction.

Other than potential discrepancies regarding when Bitters' laptop was stolen, which could certainly be explained by simply losing track of time, Plaintiff's counsel has not presented any evidence that Bitters is lying when he states his laptop was stolen. Had Plaintiff truly believed the date discrepancies were of import in determining the truthfulness of Bitters' statements, Plaintiff's counsel could have contacted the police and asked for clarification of the date and for any other information deemed important to the spoliation claims. Or he could have asked Bitters to produce those documents if the investigating officers were unwilling to share them with Plaintiff. Or he could have asked this court three months ago for assistance in deciding whether the laptop was stolen or discarded. He performed none of those steps, instead waiting until the brink of trial to file a motion and ask for adverse inferences to present not only at trial, but as evidence opposing Defendants' motions for summary judgment.

Plaintiff's counsel claims Bitters was subject to a litigation hold prior to the theft of the laptop. As such, Plaintiff argues any relevant information on the laptop should have been in counsel's possession before the laptop was stolen and Defendant's counsel is withholding the information. But a litigation hold requires the client to hold onto the documents: It does not impose an additional duty to immediately transfer any potentially relevant documents—before they were ever requested—to counsel. Here, Plaintiff's counsel initiated no discovery before September 2017, long after Bitters states his computer was stolen. Plaintiff's claim that the documents must be available from Bitters' counsel lacks merit.

Finally, Plaintiff's counsel argues that since Bitters did not state he searched other storage media (e.g., external drives or cloud storage), or computers used in the past, Bitters did not look in these locations and must therefore be sanctioned by imposition of an adverse inference. Plaintiff deposed Bitters on April 16, 2018, after receiving Bitters' affidavit explaining the theft of the computer. While Plaintiff claims Bitters could not have used the same laptop computer for eight years, he has presented no evidence supporting that assumption. And he has presented no evidence that the information stored on any previous laptop was not transferred to the new one and then wiped from the old. He presents no evidence that Bitters used cloud storage or an external drive for storing documents, specifically to include the 2008-2012 timeframe when the events at issue occurred.

By addressing the stolen computer issue, the court has addressed all facts of record regarding destroyed evidence or evidence sources—whether by negligence, intentional, or through the acts of a third person. Upon review of that evidence, Plaintiff has failed to present a threshold showing that Bitters intentionally destroyed evidence or a source of potential evidence.

2. Prejudice.

Plaintiff has not explained with any specificity what documents would be stored on the stolen computer and how those documents would assist with his case. A conclusory argument that Plaintiff needs to see the documents does not equate to a finding of prejudice. The requisite element of prejudice is satisfied by identifying the nature of the evidence destroyed. Stevenson v. Union Pac. R. Co., 354 F.3d 739, 748 (8th Cir. 2004). There must be some evidence of what the documents would have shown, and what facts must be designated as established if the court finds documents were intentionally destroyed. Fed. R. Civ. P. 37(b)(2)(i). Simply saying the documents would have been harmful to Defendants' lawsuit is not enough.

Plaintiff has failed to show any prejudice arising from the inability to obtain documents from the computer.

B. Prohibiting Evidence on Affirmative Defenses and Awarding Fees.

District courts possess broad discretion in "establishing and enforcing deadlines" as well as "maintaining compliance with discovery and pretrial orders." In re Baycol Prod. Litig., 596 F.3d 884, 888 (8th Cir. 2010) (citing Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 758–59 (8th Cir.2006)). In evaluating the propriety of a discovery motion, the court will evaluate the "entire complex of circumstances that gave rise to the motion, and what is untimely in one case may not be in another." Dziadek v. Charter Oak Fire Ins. Co., 2014 WL 820049, at *3 (D.S.D. 2014) (internal citation omitted).

The underlined timeliness of discovery motions is an important consideration. A party's position may very well be "weaken[ed] or undermin[ed]" when there have been long delays in requesting discovery, or in requesting remedies when discovery requests have gone unanswered. Fed. Prac. & Proc. Civ. § 2285 (3d ed.). Generally, belated discovery motions, especially those foisted on the court on the eve of trial, are not favored. Id. And courts often deny discovery motions when faced with looming trials and a pattern of delayed discovery requests and extensive motion practice. Mercantile Tr. Co. Nat. Ass'n v. Inland Marine Prod. Corp., 542 F.2d 1010, 1013 (8th Cir. 1976) (reasoning, in context of amending complaint, that parties' "leisurely approach to discovery" counseled against further delay of trial); Haviland v. Catholic Health Initiatives-Iowa, Corp., 692 F. Supp. 2d 1040, 1044 (S.D. Iowa 2010) ("[d]iscovery is meant to be a balanced and, hopefully, front-loaded process, not one involving deadline brinkmanship"). Outdoor Cent., Inc. v. GreatLodge.com, Inc., 2009 WL 10680030, at *1 (W.D. Mo. 2009) (reasoning that motion to compel filed one month prior to trial was "troubling" and denying the motion to avoid further delay).

In the Rule 37 context, the court should consider "when the movant learned of the [alleged] discovery violation, how long he waited before bringing it to the court's attention, and whether discovery has been completed." Long v. Howard Univ., 561 F. Supp. 2d 85, 91 (D.D.C. 2008).

Plaintiff's counsel claims Bitters and Boland did not perform a sufficient and thorough search for documents or discovery responses, did not contact third party discovery sources or disclose those sources' contact information, failed to provide full and complete discovery responses, provided responses that Plaintiff's counsel believes are not credible, redacted pages without explanation, failed to adequately

13

disclose responses to contention discovery, and failed to identify their trial witnesses and exhibits.

Plaintiff's counsel was aware, or should have been aware, of all these alleged discovery violations three months before Plaintiff filed the Filing 215 motion. The deposition deadline was April 16, 2018. Discovery is closed.

Plaintiff was afforded an opportunity to depose Bitters and Boland after the written discovery responses were served. During those depositions, Plaintiff's counsel could have explored the extent of Bitters' and Boland's efforts to fully respond to discovery. He also could have obtained information to fill any gaps or lack of clarity in their written discovery responses, or failing that, he could have promptly brought the matter to the court's attention. That did not occur.

Plaintiff's counsel could have obtained some of the information demanded but not provided through his own initiative; by contacting Plaintiff's investment and annuity sources and retrieving information from public sources.[3] Apparently, that did not occur.

Instead, Plaintiff's counsel waited to file his extensive motion until one week before the previously scheduled pretrial conference. The motion is untimely. Sanctions, including prohibiting Defendants from presenting evidence supporting

---

[3] The court recognizes that a party may not be allowed to answer a discovery request by simply stating that the requested information is publicly available or available to both parties. But when a party allegedly fails to produce discovery in response to requests, the requesting party's failure to obtain information on its own initiative undermines any claim that the information is so important that a trial continuance is necessary.

their affirmative defenses or refuting Plaintiff's claims, and any award of attorney fees for filing the untimely motion, will not be awarded.

C. Contempt.

Plaintiff's counsel asks the court to find Bitters, Boland, and their counsel in contempt. While the discovery responses were lacking in some limited respects, I have fully reviewed the discovery and there is no factual basis for a finding of contempt. The discovery responses of Bitters and Boland, and the affidavits provided by the parties may not have met the standards of Plaintiff's counsel, but were not sufficiently deficient as to warrant contempt proceedings.

Accordingly,

IT IS ORDERED: that Plaintiff's motion, ([Filing No. 215](#)), is denied, in part, and referred to Judge Rossiter for ruling, in part, as follows:

1) Plaintiff's motion for an adverse inference, to prohibit presenting evidence in support of affirmative defenses, for an award of fees, and for a finding of contempt, is denied.

2) Plaintiff's Rule 56(d) motion will be ruled on by Judge Rossiter.

3) Plaintiff's motion to continue the trial is denied as moot. The court has already continued the trial to commence on July 9, 2018, with the pretrial conference to be held on June 26, 2018. ([Filing No. 217](#)).

June 20, 2018.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge