IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ESTATE OF JOYCE ROSAMOND PETERSEN,<br><br>    Plaintiff,<br><br>  v.<br><br>WILLIAM E. BITTERS; ROBERT W. BOLAND, JR.; and JOHN L. HENRY,<br><br>    Defendants. | 8:16CV183<br><br>MEMORANDUM AND ORDER |

  This matter is before the Court on defendants Robert W. Boland, Jr.'s ("Boland") and William E. Bitters's ("Bitters") respective Motions for Summary Judgment (Filing Nos. 182 and 184). *See* Fed. R. Civ. P. 56. Plaintiff Estate of Joyce Rosamond Petersen (the "estate") responded (Filings Nos. 193 and 194) to the motions, and Bitters and Boland have jointly moved (Filing No. 195) to strike those responses and sanction the estate and defendant John L. Henry ("Henry").[1] The estate then moved to continue (Filing No. 208) summary-judgment disposition under Fed. R. Civ. P. 56(d)(2). With jurisdiction under 28 U.S.C. § 1332, the Court grants Boland's motion, grants Bitters's motion in part and denies it in part, grants the joint motion in part and denies it in part, and denies the estate's motion to continue summary-judgment disposition.

## I. BACKGROUND

  Joyce Rosamond Petersen ("Petersen"), a long-time resident of Omaha, Nebraska, met Bitters, a financial advisor based out of Sioux City, Iowa, in 2006.[2] Bitters sold several

---

[1]In their respective reply briefs (Filing Nos. 197 and 198), Bitters and Boland requested leave to incorporate additional evidence into the summary-judgment record. Treating the reply briefs as motions, the estate filed a response (Filing No. 201), and Boland and Bitters jointly filed a reply (Filing No. 207) to that response. However, Filing Nos. 197 and 198 were reply briefs and not proper motions. *See* NECivR 7.1 (describing motions and response briefs separately). Boland and Bitters do not have leave to file additional evidence and the Court will not consider Filing Nos. 201 and 207.

financial products to Petersen over the years, and, in 2008, prepared a promissory note for a $150,000 unsecured loan from Petersen to Henry. Henry never repaid the loan, and Petersen died on October 20, 2013.

On December 1, 2014, the estate filed suit in the United States District Court for the Eastern District of Texas against Bitters,[3] Boland, and Henry (collectively, the "defendants") for damages arising from the unpaid loan. After the case was transferred to the District of Nebraska, the estate filed an Amended Complaint (Filing No. 99) containing ten claims, seven of which survived the defendants' motions to dismiss (Filing Nos. 104, 106, and 112): (1) breach of fiduciary duty, (2) negligence, (3) fraud, (4) negligent misrepresentation, (5) breach of contract, (6) breach of the implied duty of good faith and fair dealing, and (7) assumpsit. A chronology of this case can be found at Filing No. 203 and most recently at Filing Nos. 219 and 220.[4] Suffice it to say after years of acrimony, finger-pointing and thousands of pages of motions, affidavits and other filings, the estate still claims it needs additional discovery and is not ready for trial. The estate requests further time to prepare, even though the matter has been pending since 2014, and the parties were less than diligent in approaching discovery in this matter.

---

[2]At that time, Petersen's last name was "Scoggins" which she used until shortly after she moved to Plano, Texas, in 2009 following the death of her husband in 2008.

[3]In the Complaint (Filing No. 1) and the Amended Complaint (Filing No. 99), the estate alleged Bitters does business as United Financial Information Services and/or United Financial Services ("UFS"). UFS was previously listed on the docket sheet as a separate party, but the docket sheet has been amended to correspond to the Amended Complaint.

[4]Henry has engaged in a game of hide and seek throughout this lawsuit, claiming he was not served with process and has not received filings from the Court and from counsel even though sent to the address he provided. He even reveled in the fact that he was going to make it difficult to serve him with process in this matter. Henry is a party to this lawsuit, and as such the Court expects him to be present at trial. If he is not present, the Court will consider sanctions or even an adverse judgment against Henry.

## II. DISCUSSION

### A. Standard of Review - Motion to Continue

Rule 56(d)(2) permits the Court to defer considering a motion for summary judgment and to allow additional discovery when "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition[.]"

A party moving for a continuance under Rule 56(d)(2) must make a good faith showing that the additional evidence discovered might rebut the opposing party's demonstration of the absence of a genuine issue of material fact. *Robinson v. Terex Corp.*, 439 F.3d 465, 467 (8th Cir. 2006). It would not suffice for a party to simply recite facts it thinks may possibly be gleaned from further discovery. *Anzaldua v. Ne. Ambulance & Fire Prot. Dist.*, 793 F.3d 822, 836-37 (8th Cir. 2015). Parties invoking Rule 56(d)(2) must do so by affirmatively demonstrating why they cannot respond to a movant's affidavits as otherwise required and "how postponement of a ruling on the motion will enable [them], by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Jackson v. Riebold*, 815 F.3d 1114, 1121 (8th Cir. 2016) (quoting *Toben v. Bridgestone Retail Operations, LLC*, 751 F.3d 888, 894 (8th Cir. 2014).

In short, Rule 56(d)(2) does not permit a "fishing expedition." *Anzaldua*, 793 F.3d at 837. And the Court enjoys wide discretion in deciding Rule 56(d)(2) motions. *Id*.

The Eighth Circuit has consistently found no abuse of discretion in the denial of Rule 56(d)(2) motions filed after the close of discovery or after extensive opportunity for discovery has already has been presented. *Elkharwily v. Mayo Holding Co.*, 823 F.3d 462, 471 (8th Cir. 2016) (reasoning that after two years of "exhaustive" discovery, the district court did not abuse its discretion in denying additional discovery under Rule 56(d)(2)); *Roe v. St. Louis Univ.*, 746 F.3d 874, 887 (8th Cir. 2014) (finding no abuse of discretion in denying Rule 56(d)(2) motion where the discovery period lasted more than a year, discovery deadlines were extended four times, and there was not a sufficient showing that additional discovery was necessary).

Put differently, Rule 56(d)(2) "is not designed to give relief to those who sleep upon their rights" and a district court need not "spare litigants from their own lack of diligence." *Rivera-Almodovar v. Instituto Socioeconomico Comunitario, Inc.*, 730 F.3d 23, 29 (1st Cir. 2013). Delays caused by a party's dilatory behavior, and a failure to timely utilize the discovery mechanisms and remedies available under the Federal Rules, are a sufficient basis for denial of a motion under Rule 56(d)(2). *Id.*

The estate did not begin discovery until seven months after the final progression order. Even after a continuance was granted at the parties' request (Filing No. 128), the estate's counsel did not depose Bitters or Boland until the April 16, 2018, deposition deadline. While the estate argues additional discovery is necessary because Bitters and Boland violated a discovery order (Filing No. 160), the alleged deficient discovery was served on March 5, 2018, and supplemented on March 10, 2018. The summary-judgment motions were filed on March 20, 2018, and the estate waited until May 24, 2018 (Filing No. 208) and June 5, 2018 (Filing No. 215) to file any motions to resolve discovery issues.

The estate's attorneys have neither worked diligently to prepare for nor timely responded to the pending summary-judgment motions. The estate has not affirmatively explained why it was unable to fully respond to Boland's and Bitters's summary-judgment motions by the deadline imposed under the local rules, and it has not explained what evidence could be presented if additional discovery and time was granted. The Court has denied (Filing No. 220) the estate's motions requesting adverse inferences against Bitters and Boland or prohibiting the consideration of evidence supporting their affirmative defenses.

This case is set for trial beginning on July 9, 2018, with a pretrial conference on June 26, 2018. The estate's motion for a Rule 56(d)(2) continuance will be denied.

### B. Standard of Review – Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support

the assertion by . . . citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Bitters and Boland have objected to and moved to strike various statements and documents submitted by the estate. The motion to strike is granted in part and denied in part. Without separately addressing each piece of challenged evidence, the Court notes it has reviewed each of the identified statements and documents, the cited evidence in support, and has considered, for the purpose of summary judgment, the evidence the Court has found to be relevant, admissible, and supported by the record.[5] The Court specifically finds Henry's affidavit, though somewhat self-serving and inconsistent, is not directly contradicted by clear deposition testimony such that this Court finds it (at this time) to be a "sham affidavit."

The Court views the evidence in the light most favorable to the nonmoving party, "[b]ut there must still be enough evidence to allow a rational trier of fact to find for the [estate] on the required elements of [its] claim[s]." *Estate of Barnwell v. Watson*, 880 F.3d 998, 1004 (8th Cir. 2018). "If the party with the burden of proof at trial is unable to present evidence to establish an essential element of that party's claim, summary judgment on the claim is appropriate because 'a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 595 (8th Cir. 2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).

---

[5]The Court cautions the parties that a good deal of the evidence relied upon by the estate at this stage is deemed admissible for the purpose of summary judgment but may not be admissible in the same form at trial.

### C. The Estate's Claims Against Boland

The claims against Boland are predicated only on the estate's claim that Boland entered into a partnership with Bitters and "is jointly and severally liable for Bitters's misconduct." Boland argues he and Bitters are not partners and he has no relationship to any of the other parties involved in the case.

"The association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership." Neb. Rev. Stat. § 67-410(1).[6] "The objective indicia of co-ownership are commonly considered to be: (1) profit sharing, (2) control sharing, (3) loss sharing, (4) contribution, and (5) co-ownership of property." *In re Keytronics*, 744 N.W.2d 425, 441 (Neb. 2008). "The five indicia of co-ownership are only that; they are not all necessary to establish a partnership relationship, and no single indicium of co-ownership is either necessary or sufficient to prove co-ownership." *Id*. The estate bears the burden of establishing the existence of the partnership by a preponderance of the evidence. *Id*. at 438.

The estate fails to present sufficient evidence to create a genuine issue of fact about the existence of any partnership because, although Bitters and Boland clearly entered into some form of association, there is no evidence of co-ownership. The only evidence the estate has presented is (1) the presence of Boland's profile on Bitters's website; (2) Boland's testimony that they "have collaborated on speaking engagements, made referrals, and exchanged financial and legal ideas over the years"; and (3) Bitters's testimony that he and Boland wrote articles together and he sometimes referred clients to Boland for trust work. This evidence does not support the existence of any of the objective indicia of co-ownership. The estate argues that the element of co-ownership is present "since they both financially benefited from

---

[6]Although Bitters lives in Iowa and conducts business there in addition to Nebraska, both parties cite Nebraska law in arguing for the existence or non-existence of the partnership. Iowa and Nebraska have also both adopted the most recent version of the Uniform Partnership Act. As such, the Court need not "entangl[e] itself in messy issues of conflict of laws." *Platte Valley Bank v. Tetra Fin. Group, LLC*, 682 F.3d 1078, 1084 (8th Cir. 2012) (quoting *Phillips v. Marist Soc. of Washington Province*, 80 F.3d 274, 276 (8th Cir. 1996)).

their association together." But mere mutual financial benefit between two separate entities—standing alone—is not sufficient to establish co-ownership. The estate makes bold claims, such as, "It is likely there was some direct compensation, as well, passed between [Boland] and [Bitters] with relation to the referrals that [Bitters] made to [Boland]." These claims are not supported by any evidence.

Although the allegation does not appear in the Amended Complaint, the estate apparently now posits Bitters and Boland might have entered into a joint venture. However, the estate also fails to meet the even higher burden of proof that applies to such a claim. *See Kohout v. Bennet Constr.*, 894 N.W.2d 821, 829 (Neb. 2017) (requiring clear and convincing evidence to prove the existence of a joint venture). "First, because a joint venture cannot arise as an operation of law, there must be evidence that [Boland] and [Bitters] intended to enter into a voluntary agreement." *Id*. at 831. Second, a joint venture requires two or more persons to "contribute cash, labor, or property to a common fund with the intention of entering into some business or transaction for the purpose of making a profit to be shared in proportion to the respective contributions" and "[e]ach of the parties must have equal voice in the manner of its performance and control of the agencies used therein, though one may entrust performance to the other." *Lackman v. Rousselle*, 596 N.W.2d 15, 23 (Neb. 1999). There is no evidence of such an agreement, any profit sharing, or any equality of control.

Because Boland's liability is entirely based on unsupported allegations of his membership in a partnership or joint venture with Bitters, he is dismissed as a party.

    **D.**    **The Estate's Claims Against Bitters**
        **1.**    **Breach of Fiduciary Duty**

To recover on a breach-of-fiduciary-duty claim, a plaintiff must prove: (1) the defendant owed it a fiduciary duty; (2) the defendant breached the duty; (3) the breach was the cause of the injury to the plaintiff; and (4) the plaintiff was damaged. *McFadden Ranch, Inc. v. McFadden*, 807 N.W.2d 785, 790 (Neb. Ct. App. 2011). The existence and scope of a fiduciary duty are questions of law for a court to decide. *Gonzalez v. Union Pac. R.R.*, 803

7

N.W.2d 424, 446 (Neb. 2011). "A fiduciary duty arises out of a confidential relationship which exists when one party gains the confidence of the other and purports to act or advise with the other's interest in mind." *Id*. "In a confidential or fiduciary relationship in which confidence is rightfully reposed on one side and a resulting superiority and opportunity for influence are thereby created on the other, equity will scrutinize the transaction critically, especially where age, infirmity, and instability are involved, to see that no injustice has occurred." *Id*.

Bitters argues he (1) owed no fiduciary duty to Petersen, (2) adequately reviewed Henry's financial information, and (3) merely introduced Petersen to Henry and prepared the promissory note but did not advise Petersen to make the loan. These contentions rest on disputed facts.

The estate has produced several individuals' testimony claiming Bitters was Petersen's financial advisor and advised her to withdraw money from other investment vehicles to make the subject loan. If believed, those facts could create a fiduciary relationship between Bitters and Petersen. *See Hanigan v. Trumble*, 562 N.W.2d 526, 531 (Neb. 1997) (listing an individual's work as a financial advisor as a source of a fiduciary relationship). The estate has also submitted an expert report pursuant to Federal Rule of Civil Procedure 26(a)(2)(B) opining Bitters breached his duty as a financial advisor both in recommending the loan and in preparing the promissory note. Although this expert testimony may not be allowed in this form at trial, it raises enough of a factual dispute to avoid summary judgment. The estate has produced sufficient evidence to create a genuine dispute of material fact for each of the elements of a claim for breach of fiduciary duty.

### 2. Negligence

"In order to recover in a negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages." *A.W. v. Lancaster Cnty. Sch. Dist. 0001*, 784 N.W.2d 907, 913 (Neb. 2010). The elements of negligence also "constitute the elements of a breach of fiduciary duty cause of action."

*McFadden Ranch*, 807 N.W.2d at 789. Because "the breach of professional or fiduciary duties" give rise to a breach of fiduciary duty claim," *id.*, an action for negligence based on a breach of professional duties would be duplicative of a claim for breach of fiduciary duty. *Cf. Renner v. Wurdeman*, 434 N.W.2d 536, 542 (Neb. 1989) (affirming a dismissal of a redundant claim on summary judgment).

An action is based on professional negligence if the profession requires (1) "specialized knowledge and often long and intensive preparation . . . ; (2) maintain[s] by force of organization or concerted opinion high standards of achievement and conduct, and (3) commit[s] its members to continued study and to a kind of work which has for its prime purpose the rendering of a public service." *Parks v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 684 N.W.2d 543, 550 (Neb. 2004). Whether an individual holds a license or regularly supplements his education are factors to consider in making this determination. *Jorgensen v. State Nat'l Bank & Tr. Co.*, 583 N.W.2d 331, 335 (Neb. 1998).

The record in this case is insufficient for the Court to determine whether Bitters's activities as a financial advisor qualify as professional activity subject to a professional standard of care. Bitters has a license to sell insurance in Nebraska, but how long he has held this license is unknown. His continuing education and other facets of his job are similarly unknown to the Court. Thus, dismissal of the estate's negligence claim as redundant is inappropriate at this stage.

### 3. Fraud

To prove fraud under Nebraska law, a plaintiff must prove: (1) a representation was made; (2) the representation was false; (3) when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) it was made with the intention that the plaintiff should rely upon it; (5) the plaintiff did so rely; and (6) the plaintiff suffered damage as a result. *Freeman v. Hoffman La Roche, Inc.*, 618 N.W.2d 827, 844-45 (Neb. 2000). False representations must be the proximate cause of the damage before a party may recover. *Huffman v. Poore*, 569 N.W.2d 549, 560 (Neb. Ct. App. 1997).

The estate alleges Bitters represented to Petersen that the loan to Henry was a sound and reasonable investment and would make a suitable replacement for her annuity. The estate claims Bitters made this representation either knowingly (aware Henry would not repay the loan) or recklessly (without engaging in sufficient due diligence). The estate also claims Bitters told Petersen "he would speak with Henry and ensure she would be repaid."

The estate has not presented any evidence Bitters told Petersen the loan to Henry was sound and reasonable, or that he told her it would make a suitable replacement for her annuity. However, the estate has submitted enough evidence at this stage, to create a genuine dispute of material fact as to Bitters's alleged representation to Petersen that he would ensure she was repaid. The estate appears able to present admissible testimony from Jilynn Wall that she overheard Bitters assuring Petersen that Henry would repay her. The estate has also presented an affidavit from Sharon Miller indicating Bitters told Petersen and others that Henry would repay the debt and that if Petersen pursued legal action then she would receive nothing. It can reasonably be inferred Petersen relied on the representation because she did not pursue legal action and the estate was harmed because a source of evidence, Petersen's own testimony, is now lost due to her death. The estate's fraud claim against Bitters survives summary judgment.

### 4. Negligent Misrepresentation

Liability for negligent misrepresentation is based upon a failure to exercise reasonable care or competence in supplying correct information. *Gibb v. Citicorp Mortg., Inc.*, 518 N.W.2d 910, 920 (Neb. 1994). "Under the law of negligent misrepresentation, 'one who, in a transaction in which he has a pecuniary interest, supplies false information for the guidance of others . . . is subject to liability for pecuniary loss caused by justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.'" *Farm Credit Servs. of Am. v. Haun, FLCA*, 734 F.3d 800, 805 (8th Cir. 2013) (applying Nebraska law).

The estate claims Bitters negligently misrepresented Henry's "financial ability and willingness to make repayments" to Petersen, but the estate fails to show that the transaction between Petersen and Henry was one in which Bitters had a pecuniary interest.[7] Because the estate cannot establish one of the required elements of its negligent-misrepresentation claim, that claim is dismissed.

### 5. Breach of Contract

To state a claim for breach of contract under Nebraska law, a plaintiff must plead facts showing "the existence of a promise, its breach, damage, and compliance with the conditions precedent which activate the defendant's duty." *Dep't of Banking & Fin. of Neb. v. Wilken*, 352 N.W.2d 145, 147 (Neb. 1984). To create a contract, there must be both an offer, an acceptance, and a meeting of the minds or a binding mutual understanding between the parties to the contract. *City of Scottsbluff v. Waste Connections of Neb., Inc.*, 809 N.W.2d 725, 740 (Neb. 2011).

The estate alleges Bitters had a written or oral contract with Petersen to provide financial advice. It also claims Bitters assisted Henry in breaching the terms of the promissory note. While the estate has presented sufficient evidence to create a genuine dispute about whether Bitters was Petersen's financial advisor, there is little evidence of an actual contractual relationship between Bitters and Petersen. Although not a model of clarity, the Court nonetheless finds the estate has alleged sufficient facts and provided just enough evidence of a contractual relationship between Bitters and Petersen to withstand summary judgment as to that claim.[8]

---

[7] In a sworn declaration (Filing No. 193-4), Kurtis Fricke alleged Bitters received a financial kickback from Henry's purchase of life insurance with the funds received from Petersen, but this testimony was previously stricken as improper expert testimony.

[8] At trial, in order to submit this claim to the jury, the estate must specifically articulate, through competent and admissible evidence, the terms and the existence of such a contract. It will not suffice to simply state that Petersen considered Bitters her financial advisor.

In contrast, the estate provides no support for any breach-of-contract claim against Bitters based on the promissory note. The promissory note, which neither party disputes is accurate, creates a contractual relationship between Henry and the estate but contains no duties for Bitters to perform and thus none he could breach. The estate's breach-of-contract claim against Bitters based on the promissory note is dismissed.

### 6. Breach of the Implied Duty of Good Faith and Fair Dealing

The implied duty or covenant of good faith and fair dealing exists in every contract. *Farm Credit*, 734 F.3d at 805. Because the estate has made some showing of a contract between Petersen and Bitters (albeit tenuous), this claim will survive summary judgment.

### 7. Assumpsit

To recover for assumpsit, which is also referred to as an action for money had and received, a plaintiff must show the defendant: (1) received money; (2) retained possession of the money; and (3) in justice and fairness ought to pay the money to the plaintiff. *Abante, LLC v. Premier Fighter, L.L.C.*, 836 N.W.2d 374, 379 (Neb. Ct. App. 2013). An action in assumpsit may be brought where a party has received money that in equity and good conscience should be repaid to another. *City of Scottsbluff*, 809 N.W.2d at 739. When a party uses an assumpsit action in this sense, it is a quasi-contract claim sounding in restitution. *Id.*

The estate alleges Bitters took money that belongs to the estate and has not returned it because the money loaned to Henry was "upon information and belief, distributed with Bitters." There is no evidence to support this contention. According to Henry's affidavit, he used the loan money to pay a life-insurance premium, but any benefit Bitters received from this was indirect. The estate's assumpsit claim against Bitters is dismissed.

### E. Statutes of Limitations

Bitters argues the estate's claims are barred by Nebraska's various statutes of limitations. *See* Neb. Rev. Stat. §§ 25-207, 25-222 (creating four-year limitation on fraud and other torts and two-year limitation on professional negligence). The estate disagrees, arguing

the professional-negligence limitation does not apply, the discovery rule delayed the accrual of the claims, and the doctrine of equitable estoppel bars Boland and Bitters from relying on the statutes of limitations.

For the reasons stated earlier in the section on negligence, the lack of developed specific facts make it impossible to determine that the two-year limitation on professional negligence applies as a matter of law. The alleged actions underlying the estate's fraud claim continued until 2013, so at least a portion of Bitters's alleged fraud may fall within the four-year statute of limitations. *Anthony K. v. Neb. HHS*, 855 N.W.2d 788, 801-02 (Neb. 2014) (explaining the accrual of continuing torts). In any event, the Court finds the estate has presented sufficient facts for the issue of equitable estoppel to survive summary judgment.

Under Nebraska law, a plaintiff or the estate must satisfy six elements, three of which apply to its own conduct and three of which apply to the conduct of the defendant, to avoid a statute of limitations under the doctrine of equitable estoppel. *Woodard v. City of Lincoln*, 588 N.W.2d 831, 836 (Neb. 1999).

> The elements of equitable estoppel are, as to the party estopped: (1) conduct which amounts to a false representation or concealment of material facts, or at least which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. As to the other party, the elements are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his or her injury, detriment, or prejudice.

*Olsen v. Olsen*, 657 N.W.2d 1, 8 (Neb. 2003).

The estate has shown a genuine dispute as to the elements of equitable estoppel at this stage of the litigation based on the same evidence on which its fraud claim survives. Summary judgment will not be granted on any of the estate's claims based on the statutes of limitations.

## F. Sanctions

The estate has requested sanctions, dredging up past discovery disputes and claiming Bitters's affidavit contains false statements. In their motion to strike, Bitters and Boland likewise request sanctions against the estate, the estate's counsel, and Henry under Federal Rule of Civil Procedure 56(h). While this litigation has involved endless bickering between counsel and an unwarranted number of voluminous and repetitive filings, the Court does not conclude at this time, that the affidavits were submitted in bad faith. No sanctions are granted.[9]

## III. CONCLUSION

After considering the competent summary-judgment evidence, the Court concludes the estate has not presented sufficient evidence to prove Boland is liable for Bitters's alleged actions based on a theory of partnership liability or membership in a joint venture. The estate has also failed to support its negligent misrepresentation, breach of contract (on the note), and assumpsit claims against Bitters, but has presented sufficient evidence to support its breach of contract (with Bitters), breach of the duty of good faith and fair dealing, breach of fiduciary duty, negligence, and fraud against Bitters. Accordingly,

IT IS ORDERED:

1. Plaintiff Estate of Joyce Rosamond Petersen's motions for continuance under Fed. R. Civ. P. 56(d)(2) (Filing Nos. 208 and 215) are denied.
2. Robert W. Boland, Jr. and William E. Bitters's joint Motion to Strike and for Sanctions (Filing No. 195) is granted in part and denied in part.
3. All requests for sanctions are denied.
4. Robert W. Boland, Jr.'s Motion for Summary Judgment (Filing No. 182) is granted.
5. Robert W. Boland, Jr. is dismissed as a party.
6. William E. Bitters's Motion for Summary Judgment (Filing No. 184) is granted in part and denied in part.

---

[9] Should admissible trial testimony establish that any of the affidavits were submitted in bad faith, the Court may revisit this ruling.

7. Summary judgment is granted in favor of William E. Bitters on the estate's claims of negligent misrepresentation, breach of contract as to the note, and assumpsit. Summary judgment is denied in all other respects.

Dated this 22nd day of June, 2018.

BY THE COURT:

Robert F. Rossiter, Jr.
United States District Judge