IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ESTATE OF JOYCE ROSAMOND PETERSEN, <br><br> Plaintiff, <br><br> v. <br><br> WILLIAM E. BITTERS and JOHN L. HENRY, <br><br> Defendants. | **8:16CV183** <br><br><br> **MEMORANDUM AND ORDER** |

This matter is before the Court on (1) plaintiff Estate of Joyce Rosamond Petersen's ("estate") Motion to Alter and Obtain Relief from Aspects of Judgment and for New Trial on Certain Issues (Filing No. 291) and (2) defendant William E. Bitters's ("Bitters") Motion for Judgment as a Matter of Law, or in the Alternative, Motion for New Trial (Filing No. 289). The deadline for briefing on these matters has passed and the motions are now ripe for decision. For the reasons stated on the record at trial as supplemented below, the parties' post-trial motions are denied.

## I.     BACKGROUND

In 2006, Joyce Rosamond Petersen ("Petersen"), then a resident of Omaha, Nebraska,[1] met Bitters, a financial advisor based in Sioux City, Iowa. Bitters sold several financial products to Petersen over the years, and, in 2008, prepared a promissory note for

---

[1]Petersen moved to Texas to live near her children in 2009.

a $150,000 unsecured loan from Petersen to defendant John L. Henry ("Henry")—another of Bitters's clients. Petersen died on October 20, 2013. Henry never repaid the loan.[2]

On December 1, 2014, the estate, alleging diversity jurisdiction, filed suit in the United States District Court for the Eastern District of Texas against Bitters, Henry, and Robert W. Boland ("Boland"),[3] for damages arising out of the unpaid loan. The case was transferred to this district on April 25, 2016. The lawsuit had a long and troubling history of unprofessional conduct between counsel in the case.[4] Throughout the case, counsel were, at best, discourteous to each other and to the magistrate judge,[5] who literally spent days refereeing some real but mostly unnecessary discovery disputes. A review of the many sidebar conferences at trial, most of which were requested by Gaudet, provides ample evidence of the constant interruptions and argumentative nature of Gaudet's behavior throughout the trial.

On June 22, 2018, the Court granted in part Bitters's Motion for Summary Judgment (Filing No. 184). Even though the Court had made it clear that the matter was proceeding to trial, the parties were not prepared for the final pretrial conference. Again, the magistrate judge spent days trying to put together an Order on Final Pretrial Conference (Filing

---

[2]Henry, who proceeded pro se throughout the matter, has not filed any post-trial motions.

[3]Boland was dismissed on summary judgment. Nonetheless, during trial and to this day, the estate's counsel, Robert J. Gaudet, Jr. ("Gaudet"), has sought to bring Boland back into this lawsuit. Incredibly, the estate asks this Court in its post-trial motions to "hold Robert W. Boland co-liable with Bitters," even though he was no longer a party to the lawsuit at the time of trial. The request is absolutely frivolous. The estate provides no legal support for imposing "co-liability" on a dismissed party and points to nothing the Court did not already consider on summary judgment. The estate's request is denied.

[4]Attorney Joel Feistner, who tried the matter for Bitters, was involved only as local counsel until Matthew Zarghouni ("Zarghouni") indicated he was not able to try the case due to a family emergency. It is the pretrial conduct of Gaudet, and to some extent Zarghouni, throughout this lawsuit which is troubling.

[5]The Honorable Cheryl R. Zwart, United States Magistrate Judge for the District of Nebraska.

No. 234). This Court entered a Supplemental Order on Final Pretrial Conference (Filing No. 243) setting forth the issues to be tried.[6] Neither party timely objected to the issues as framed by this Court.

At trial, the Court instructed the jury on the estate's claim against Henry for breach of contract and the estate's timely claims against Bitters for fraudulent misrepresentation and breach of fiduciary duty.[7] The jury found in favor of the estate against Henry and calculated the estate's damages to be $356,619.30. The jury also found in favor of the estate against Bitters on both claims and calculated the estate's damages for those claims to be the identical amount of $356,619.30.

Significantly, the estate's expert testified at trial that $356,619.30 was the current value of the unpaid loan under the terms of the promissory note. The jury awarded no other damages.

During the trial, it was discovered that the estate had an undisclosed and disconcerting agreement with Henry (Exhibit 216). That agreement provided for the dismissal of the estate's claim against Henry after trial in exchange for Henry's "truthful" testimony on certain specified topics, with such truthfulness to be determined solely by estate's counsel. Consistent with that agreement, after the Court instructed and submitted the matter to the jury, the estate moved to dismiss the case against Henry. *See* Fed. R. Civ. P. 41(a)(2). The Court took that motion under advisement, stated its concern about the

---

[6]Because the parties were ill-prepared for the conference (indeed, Gaudet did not even attend and gave no notice of his intent not to attend), the Order on Final Pretrial Conference submitted to the Court set forth a litany of disputed factual issues but did little to clarify the issues remaining for trial.

[7]The Court dismissed the tort claims against Henry before submitting the case to the jury. The Court also dismissed certain tort claims against Bitters, largely based on the applicable statutes of limitations, and all claims of compensatory damages due to lack of evidence, leaving for the jury only damages arising directly from Bitters's alleged misconduct and the nonpayment of the promissory note.

estate's gamesmanship, and denied the motion after the jury reached its verdict (Filing No. 281).[8]

## II.    DISCUSSION

### A.    Standards of Review

The estate seeks relief pursuant to Federal Rule of Civil Procedure 59(e), Federal Rule of Civil Procedure 60(a)-(b) and (d), and, alternatively, Rule 59(a).  Bitters renews his motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), *Nassar v. Jackson*, 779 F.3d 547, 551 (8th Cir. 2015), and seeks other relief under Rule 59(a).

A new trial is required under Rule 59(a) "when a miscarriage of justice occurred in the first trial."  *Larson v. Farmers Coop. Elevator*, 211 F.3d 1089, 1095 (8th Cir. 2000).  "[A] movant should not use Rule 59 merely to relitigate previously-decided matters."  *Am. HealthNet, Inc. v. Westside Cmty. Hosp., Inc.*, No. 8:04CV9, 2006 WL 3063481, *1 (D. Neb. Oct. 24, 2006) (quotation omitted).

"Rule 59(e) motions serve the limited function of correcting 'manifest errors of law or fact or to present newly discovered evidence.'"  *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006) (quoting *Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs.*, 141 F.3d 1284, 1286 (8th Cir. 1998)).  Such motions are not devices to "introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment."  *Id.* (quoting *Innovation Home Health Care*, 141 F.3d at 1286).  Rule 60(b) and Rule 59(e) motions are analyzed identically, *id.* at 933 n.3, and will be considered together for this motion.

Under Rule 60(a), "a court may correct a judgment so as to reflect what was understood, intended and agreed upon by the parties and the court."  *Kocher v. Dow Chem.*

---

[8]Bitters also sought to amend his answer after submission of the case to the jury to add failure-to-mitigate as a defense.  The Court also denied that motion.

*Co.*, 132 F.3d 1225, 1229 (8th Cir. 1997) (quoting *United States v. Mansion House Ctr. Redev. Co.*, 855 F.2d 524, 527 (8th Cir. 1988) (per curiam)). Simply put, Rule 60(a) "allows relief from a judgment based on clerical mistakes in the record." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1538-39 (8th Cir. 1996).

Rule 60(d) permits the Court to set aside judgments for fraud on the Court but relief "is only available where it would be 'manifestly unconscionable' to allow the judgment to stand." *Superior Seafoods, Inc. v. Tyson Foods, Inc.*, 620 F.3d 873, 878 (8th Cir. 2010). Fraud on the Court "is narrowly defined as fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury." *United States v. Smiley*, 553 F.3d 1137, 1144 (8th Cir. 2009).

"A court reviewing a Rule 50(b) motion is limited to consideration of only those grounds advanced in the original, Rule 50(a) motion." *Nassar*, 779 F.3d at 551. Judgment as a matter of law is appropriate "only when no reasonable juror, taking all reasonable inferences in the light most favorable to the opposing party, could find against the movant." *Estate of Snyder v. Julian*, 789 F.3d 883, 887 (8th Cir. 2015).

### B. The Estate's Motion to Alter and Obtain Relief from Aspects of the Judgment and for New Trial on Certain Issues

The estate seeks relief under Rules 59 and 60 on the following issues: (1) general and compensatory damages in the judgment; (2) punitive damages and attorney fees under Texas law; and (3) liability for Bitters for negligence, negligent misrepresentation, and breach of contract, and "co-liability" for Bitters and Henry for civil conspiracy. The estate simply reargues issues that have already been decided in this case and attempts to inject issues in the case following the jury's verdict. All of the estate's objections were carefully considered and resolved in this Court's prior rulings on dismissal (Filing No. 121), summary judgment (Filing No. 221), the Order on Final Pretrial Conference and Supplement thereto (Filing Nos. 234 and 243), Rule 50 motion (Filing No. 286), the Jury

Instruction Conference (Filing No. 287), and the Memorandum and Order ("Verdict Order") (Filing No. 281).

The estate has not pointed to any newly discovered evidence or manifest errors, clerical mistakes, fraud on the Court, or miscarriage of justice. Instead, it simply rehashes previous arguments. While there appears little reason to revisit these issues, the Court will nonetheless provide a brief discussion in order to remove any doubt that the estate's motion must fail.

### 1. General and Compensatory Damages in the Judgment

Pursuant to Rule 59(e) and Rule 60(b), the estate seeks to alter the amount of damages in the judgment. The estate also moves under Rule 60(b) for the Court to award it damages for pain and suffering, or, alternatively, for the Court to grant a new trial on that issue under Rule 59(a). The requests are denied on all grounds.

The Court carefully considered and explained the damage award in the Verdict Order. The only damages awarded by the jury were the amount of the original note plus interest set forth in the note and that is the only amount sufficiently supported by the evidence in this case.[9] The estate is not entitled to recover that amount from both Bitters and Henry and double its recovery to an amount unsupported by the evidence. *See Tolliver v. Visiting Nurse Ass'n*, 771 N.W.2d 908, 916 (Neb. 2009) ("[A] party may not have double recovery for a single injury."). As the Court noted at both the Rule 50 hearing and the jury-instruction conference, because there is insufficient evidence of any damages beyond the monetary damages awarded, it follows that the estate's request for damages for pain and suffering must also be denied on all grounds.

---

[9]The $356,619.30 in damages awarded by the jury is the precise amount the estate's expert testified to as the current value of the unpaid loan under the terms of the note. It cannot be argued, by either party, that the jury awarded damages other than the note plus interest.

The estate's request for a more detailed Judgment and Memorandum and Order under Rule 60(a) is baseless. The Judgment (Filing No. 282) entered in this case was clear and thorough and without clerical mistakes.

### 2. Punitive Damages and Attorney Fees under Texas Law

The estate seeks relief pursuant to Rule 59(e), asking for punitive damages and attorney fees under Texas law. However, Nebraska law—not Texas law—applies in this case.[10] As the Court noted in its Supplemental Order on Final Pretrial Conference, Nebraska law is clear that neither punitive damages nor attorney fees are available in this case. *See O'Brien v. Cessna Aircraft Co.*, 903 N.W.2d 432, 458 (Neb. 2017) (finding punitive damages contravene Article VII, § 5 of the Nebraska Constitution); *Parkert v. Lindquist*, 693 N.W.2d 529, 531 (Neb. 2005) (recognizing that under Nebraska law contract provisions like the one in the promissory note in this case "requiring that in the event of litigation the prevailing party will be entitled to attorney fees [are] contrary to public policy and void"). To the latter point, during a sidebar at trial, the estate conceded the attorney fees provision in the note was unenforceable under Nebraska law and attempted to elicit as much from its expert to indicate that Bitters was negligent for including such an unenforceable provision. The estate's request for punitive damages and attorney fees is denied.

### 3. Negligence, Negligent Misrepresentation, Breach of Contract, and Civil Conspiracy

The estate urges this Court to hold Bitters liable for negligence, negligent misrepresentation, and breach of contract, and to hold Henry and Bitters liable for civil conspiracy despite the fact that the Court did not instruct the jury on those issues. The

---

[10]The parties stipulated on the record at the final pretrial conference that Nebraska law governs in this case (Filing No. 224). The estate acknowledged that stipulation numerous times throughout trial.

estate seeks relief under Rule 59(e) or, alternatively, a new trial pursuant to Rule 59(a) and Rule 60(d).

After due consideration, the negligence and breach-of-contract claims against Bitters were dismissed at the Rule 50 hearing. On the negligence claim, the Court echoed its decision on summary judgment, finding that under the facts alleged the claim was duplicative of the breach-of-fiduciary-duty claim, *see Renner v. Wurdeman*, 434 N.W.2d 536, 542 (Neb. 1989) (affirming a dismissal of a redundant claim on summary judgment), and barred by the applicable statute of limitations, *see* Neb. Rev. Stat. § 25-207 (creating a four-year statute of limitations for torts). The breach-of-contract claim fails because there was no evidence of a written contract between Petersen and Bitters and any oral-contract claim is barred by the applicable four-year statute of limitations.[11] *See* Neb. Rev. Stat. § 25-206. Accordingly, the estate is not entitled to relief on these issues.

The estate's negligent-misrepresentation and civil-conspiracy claims also fail. As the Court has noted in earlier rulings, neither claim was included as controverted issues for trial in the Court's Supplemental Order on Final Pretrial Conference and the estate did not timely object to the exclusion.[12] The negligent-misrepresentation claim was dismissed on summary judgment. And though the estate used the term "civil conspiracy" in passing in the Amended Complaint (Filing No. 99), the estate did not plead it as a distinct theory of

---

[11]The only evidence of an oral contract was second-hand knowledge that Bitters did business with Petersen. Petersen's children (who are the estate's representatives) speculated about an "agreement" or "contract." But having clearly testified that Petersen generally did not discuss any of her business affairs with anyone, her children had no basis upon which to testify as to any contract.

[12]At trial, the Court repeatedly admonished Gaudet that its summary-judgment order and the Supplemental Order on Final Pretrial Conference set forth the remaining issues for trial. The estate made an untimely motion for the Court to reconsider the dismissal of the negligent-misrepresentation claim at summary judgment and its exclusion from the Supplemental Order on Final Pretrial Conference (Filing No. 247), but that motion was more than a week late and not considered due to its tardiness. It also only raised arguments the Court had already considered.

recovery.[13]  For those reasons, the estate's incredible request for the Court to simply assign liability for claims that were never tried is denied.

### C.  Bitters's Motion for Judgment as a Matter of Law, or in the Alternative, Motion for New Trial[14]

#### 1.  Bitters's Rule 50(b) Motion

Bitters broadly asserts that he is entitled to judgment as a matter of law because the jury verdict against him on liability and damages is against the weight of the evidence, internally inconsistent, and contrary to Nebraska law.  Bitters supports this assertion on three bases: (1) the estate's claims are barred by the applicable statute of limitations, (2) the estate failed to adduce evidence establishing any amount of damages attributable to Bitters, and (3) the estate was not a real party in interest for any devaluation of the annuities resulting from the loan to Henry.  Bitters falls short on all three points.

Taking the statute of limitations first, Bitters argues that all claims against him are barred by the statute of limitations for professional negligence and the Court erred in denying his pretrial motion for summary judgment and trial motion for judgment as a matter of law on that point.  Under Nebraska law, actions for professional negligence are subject to a two-year statute of limitations, *see* Neb. Rev. Stat. § 25-222, but neither the Nebraska legislature nor Nebraska Supreme Court have "specifically stated which occupations are governed by § 25-222."  *Parks v. Merill, Lynch, Pierce, Fenner & Smith,*

---

[13]The estate did originally plead a Racketeer Influenced and Corrupt Organizations Act ("RICO") conspiracy claim, *see* 18 U.S.C. § 1962 (prohibited activities), but it was dismissed (Filing No. 121) on Bitters's amended motion to dismiss for failure to state a claim (Filing No. 104).  The Court found the RICO claim failed because the estate did not allege particular facts showing an organized, long-term, habitual fraud scheme.  In dismissing the RICO claim, the Court noted no other conspiracy claims survived.

[14]The Court's resolution of Bitters's post-trial motion follows the order of his brief.  While Bitters's motion does not specify on which ground he seeks relief under for each issue, Rule 50(b) or Rule 59(a), his brief does.

*Inc.*, 684 N.W.2d 543, 549-50 (Neb. 2004) (quoting *Lawyers Title Ins. Corp. v. Hoffman*, 513 N.W.2d 521, 524 (Neb. 1994)).

The Court already carefully considered and twice rejected Bitters's argument on this point concluding the Nebraska Supreme Court would find § 25-222 does not apply if it was presented with this case. Bitters has not presented any new arguments or reasoning, and the Court finds no reason to further revisit its decision on the matter.[15]

Next, Bitters contends the estate failed to adduce evidence establishing any amount of damages attributable to him. Bitters concedes evidence at trial showed damages in the amount of the note plus interest—$356,619.30. But he asserts that amount is only attributable to Henry and not him.

Specifically, Bitters claims the jury verdict is inconsistent and against the weight of the evidence because the damages are based on a theory affirming the note. That is, the damages reflect the amount the estate would have received if the note was enforced. Bitters insists that because the estate elected to enforce the note, no damages can be attributed to him because any theory of recovery against him in the estate's Amended Complaint is grounded in one allegation: he "improperly 'advised' Joyce Petersen to withdraw $150,000 in annuities and make a loan to Defendant Henry." The way Bitters sees it, the theory against him is "but for" his advice—or his "fraudulent inducement" as he referred to it at the Rule 50 hearing—Petersen never would have made the loan.

From this perspective, Bitters asserts the only damages attributable to him are the "loss of the value of the $150,000 had it remained in the annuity" and no evidence was offered to quantify that amount. According to Bitters, because the estate elected to enforce

---

[15]Bitters also argues at length about the applicability of the discovery rule on tolling the statute of limitations. The Court ruled at the Rule 50 hearing that the discovery rule does not apply in this case.

the note and seek monetary damages rather than rescind it and seek restitution, any jury verdict imposing liability and damages on him cannot be affirmed as a matter of law.

Bitters's argument is flawed in many ways. First, the Court ruled at the Rule 50 hearing that any claim of fraud against Bitters based on his conduct at the time the note was made was time barred. Likewise, the Court found that any breach of fiduciary duty claim arising from Bitters persuading Petersen to make the loan was barred by the statute of limitations. In other words, the allegation that Bitters "improperly 'advised'" Petersen to make the loan in the first place was no longer an issue when the case was submitted to the jury. Accordingly, the jury's determination of attributable damages was not founded on that conduct. Instead, the jury was instructed on the following claims against Bitters: (1) breach of fiduciary duty for persuading Henry not to repay the note in February 2009 and for lying to Petersen about following up with Henry and (2) fraudulent misrepresentations made in 2011 through 2013 in which Bitters made false statements to Petersen that he would speak to Henry and ensure she would be repaid.

On these claims, there is sufficient evidence of damages attributable to Bitters. Namely, testimony from multiple witnesses established that (1) Henry informed Bitters in February of 2009, when the note was due, he could repay Petersen but would have to cancel his life insurance policy with Bitters, (2) Bitters, without consulting Petersen, advised Henry to extend his life insurance policy rather than repay Petersen's loan, which Bitters asserted could be extended for another year, (3) Bitters urged Petersen not to try to collect from Henry because Henry could declare bankruptcy, and Bitters told Petersen he was following up with Henry and would ensure she would be repaid, (4) after Bitters told Henry not to repay Petersen, Bitters stopped following up with Henry about repaying her, and (5) Petersen was never repaid. From this, a reasonable jury could conclude damages in the

amount of the note plus interest were attributable to Bitters, so this basis for Bitters's motion also fails.[16]

Finally, Bitters argues the estate was not a real party in interest with respect to any devaluation of the annuities. Bitters did not raise this argument in his Rule 50 motion at trial, so the Court may not consider it in now. *See Nassar*, 779 F.3d at 551 (holding the Rule 50(b) analysis must be limited to consideration of only those grounds advanced in the Rule 50(a) motion). Accordingly, Bitters's motion for judgment as a matter of law is denied.[17]

### 2. Bitters's Motion Pursuant to Rule 59(a)

Bitters seeks a new trial because of the following issues: (1) certain evidence at trial was offered only to inflame the passion of the jury; (2) Gaudet's conduct; (3) the jury instructions and verdict form; (4) an "improper 'Mary Carter' agreement"; (5) joint and several liability; and (6) Bitters's Amended Answer and Proposed Supplemental Jury Instruction. The Court will address each issue.

### a. Passion of the Jury

Bitters contends he is entitled to a new trial because evidence on the following issues "served no purpose other than to inflame the passion of the jury": (1) testimony by Clarence and Valora Nelson (the "Nelsons"); (2) the estate's use of the phrase "needlessly endanger"; and (3) the estate's expert's testimony about defects in the note and evidence

---

[16]Bitters argues in passing that the jury instructions were misleading because of some inconsistencies between the theories of rescinding and enforcing the contract. Bitters did not make this challenge in his Rule 50 motion at trial or at the jury instruction conference, so it is waived. *See Nassar*, 779 F.3d at 551.

[17]Even if this argument was properly raised, devaluation of the annuities was no longer an issue when this case was submitted to the jury. As noted above, all claims relating to Bitters's conduct at the time the note was made—including persuading Petersen to withdraw the annuities—are barred by the applicable statute of limitations and the jury was not instructed to consider those claims. As such, Bitters's present motion is baseless.

of noneconomic damages. Bitters's assertion that the evidence only served to impassion the jury is unavailing and a new trial is not warranted.

First, Bitters challenges the Nelsons's testimony. The Nelsons were elderly, long-term clients of Bitters, and Bitters arranged for them to loan $200,000 to Henry at or about the same time Bitters arranged for Petersen's $150,000 loan to Henry. Like Petersen's loan, the Nelsons's loan was high-risk, unsecured, and never repaid. The Nelsons testified about their loan to Henry and similar experience with Bitters, but the Court did not permit them to testify about their lawsuit.

Under Federal Rule of Evidence 404(b), evidence of other wrongs or acts is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Such evidence of other acts is admissible where it is "(1) relevant to a material issue, (2) established by a preponderance of the evidence, (3) more probative than prejudicial, and (4) similar in kind and close in time to the events at issue." *Duckworth v. Ford*, 83 F.3d 999, 1001 (8th Cir. 1996) (quoting *United States v. Hazelett*, 32 F.3d 1313, 1319 (8th Cir. 1994)); *see also Austin v. Loftsgaarden*, 675 F.2d 168, 180 (8th Cir. 1982) (permitting evidence in a fraud case of a prior state-court judgment that the defendant defrauded a party to show intent).

The Nelsons's testimony was admissible under Rule 404(b). The Court allowed the Nelsons's testimony for the limited purpose of showing that around the same time Bitters persuaded Petersen to loan $150,000 to Henry, Bitters made a similar arrangement with the Nelsons. Because Nelsons's experience with Bitters was close in time and similar in circumstance to Petersen's, their testimony was relevant to the claims against Bitters.[18] *See*

---

[18]Bitters concedes the loans were made within one month of each other but emphasizes the Nelsons's loan was made *after* Petersen's. The standard set forth by the Eighth Circuit simply focuses on temporal proximity and does not distinguish between preceding and proceeding acts. *See Duckworth*, 83 F.3d at 1002.

Fed. R. Evid. 401, 402; *Duckworth*, 83 F.3d at 1001. More specifically, it was probative of Bitters's alleged motive, intent, knowledge, and plan to breach the contract, breach his fiduciary duties, fraudulently and falsely make representations to Petersen, and whether he acted negligently.[19] *See Austin*, 675 F.2d at 180. Because of this probative value, Bitters's contention the Nelsons's testimony only served to impassion the jury is baseless,[20] and his request for relief on this basis is denied.

Next, Bitters contends the Court erred in allowing the estate to use the phrase "needlessly endanger." The estate used the phrase "needlessly endanger" throughout trial, but not in a way that improperly impassioned the jury. Rather, the Court merely permitted the estate to use the phrase as part of the theme of its case. The Court made clear through repeated oral instructions that only the Court provides the legal standard and "needlessly endanger" was not part of any standard of care in the case. The Court accurately instructed the jury on the law in the final jury instructions which did not include the phrase "needlessly endanger."

The Court also limited the estate's use of the phrase. The Court sustained Bitters's objection to the estate asking a lay witness, Erik Petersen, whether Bitters needlessly endangered Petersen's right to get a safe and reasonable return on an investment, ruling the question called for a legal conclusion from a lay witness. When the estate used the phrase during its direct examination of Bitters, the Court proffered an additional instruction to the jury that neither questions asked by counsel nor witness responses establish legal issues like standard of care. The Court also barred the estate from using the phrase during its

---

[19]Even though some of the claims—specifically, those relating to the inception of the note—were dismissed on Bitters's Rule 50 motion at trial, the Nelsons's testimony was still probative to the surviving claims, and there was no way for the Court to predict prior to the close of the estate's case which claims, if any, would be dismissed at the Rule 50 hearing.

[20]The probative value of the testimony outweighed any alleged risk of inflaming the jury, especially considering the Court's limitations. *See id.* at 1001; Fed. R. Evid. 403. Though it would have been permissible under Eighth Circuit precedent, *see Duckworth*, 83 F.3d at 1002, the Court barred mention of the Nelsons's own lawsuit against Bitters and otherwise narrowly limited the testimony.

direct examination of its expert to avoid misleading the jury by enlarging the phrase's importance.

Bitters's challenge to the estate's expert's testimony regarding facial and substantive defects of the promissory note also falls short. The typographical errors and Bitters's failure to include provisions favorable to Petersen were relevant to several of the estate's claims, including negligence and breach of fiduciary duty.[21] Allowing the estate's expert to testify about the defects did not improperly inflame the jury, and in any case, it was not unfairly prejudicial because expert testimony was not required for the jury to identify typographical errors which were discernible on the face of the note in evidence. A new trial is not warranted on this basis.[22]

Finally, Bitters contends the Court erred in allowing testimony about Petersen's suffering and anxiety from the unpaid debt because noneconomic damages are not available on fraudulent-misrepresentation or breach-of-contract claims under Nebraska law. *See Tolliver*, 771 N.W.2d at 915-16; *Shaw v. W. Sugar Co.*, 497 N.W.2d 686, 691 (Neb. 1992). Noneconomic damages are available for other claims asserted against Bitters, such as negligence, so Bitters's argument fails. *See* Neb. Rev. Stat. § 25-21,185.08 (defining noneconomic damages available where contributory negligence is a defense); *Hoffart v. Hodge*, 567 N.W.2d 600, 607 (Neb. 1997) (finding contributory negligence can apply in professional negligence cases). Moreover, after dismissing the negligence claim

---

[21]Though some of those claims were later dismissed at the Rule 50 hearing, the evidence was nonetheless relevant and not inflammatory, and the Court could not predict which claims would survive Bitters's Rule 50 motion at trial.

[22]Bitters indicated in paragraph twelve of his motion that the estate's expert's testimony should have been struck entirely. Because Bitters did not brief that issue it is denied. *See* NECivR 7.1(a)(1)(A). Even if Bitters had properly raised this argument, it would be unavailing. While some of the estate's expert's testimony became irrelevant after some of the estate's claims were dismissed at the Rule 50 hearing, other parts of the testimony remained relevant to the claims projected to the jury and, as noted above, the Court could not anticipate which claims would survive.

at the Rule 50 hearing and finding insufficient evidence of damages for pain and suffering, the Court properly instructed the jury on the type of damages available.

### b.    Gaudet's Conduct

Bitters argues Gaudet deprived him of a fair trial by "repeated and contumacious conduct, necessitating repeated objections from [Bitters's] Counsel." In support, Bitters provides a list from (a) to (n) describing Gaudet's conduct which, when considered in conjunction with the number and length of sidebar conferences requested by the estate, Bitters claims justifies a new trial.

The Court enjoys broad discretion in deciding whether to grant a new trial based on counsel's conduct. *Blair v. Wills*, 420 F.3d 823, 829 (8th Cir. 2005). A new trial is warranted where it has a prejudicial effect that "cannot be overcome by admonishing the jury or rebuking counsel." *Id.* To determine whether the conduct was prejudicial, the Court considers the totality of the circumstances, including the nature and frequency of the conduct, the way the parties and Court treated the comments, and the strength of the case and verdict itself. *See City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 756 (6th Cir. 1980).

While many of Bitters's complaints about Gaudet's conduct are well-founded, the trial was not unfair. The Court instructed the jury in Instruction Nos. 1 and 4 and during trial that neither objections nor sidebars should be considered when reaching the verdict. Bitters has not persuaded the Court he was materially prejudiced by his large volume of objections when the majority of those objections were sustained. Though Gaudet was argumentative and at times disrespectful, and Gaudet was not a model of skill and effectiveness, the Court finds Gaudet's conduct did not materially affect the jury's verdict. *See Peter Kiewit*, 624 F.2d at 756 (finding the nature of counsel's conduct informs whether it was prejudicial).

### c. The Jury Instructions and Verdict Form

Bitters asserts a new trial is warranted because of purported errors in the jury instructions and verdict form. The Court has "broad discretion in formulating jury instructions." *Vaughn v. Ruoff*, 304 F.3d 793, 795 (8th Cir. 2002). The instructions, "viewed in the light of the evidence and applicable law, [should] fairly and adequately submit[] the issues in the case to the jury." *White v. Honeywell, Inc.*, 141 F.3d 1270, 1278 (8th Cir. 1998) (quoting *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1057 (8th Cir. 1997)). A new trial is warranted where the improper instructions cause material prejudice. *Gray v. Bicknell*, 86 F.3d 1472, 1485 (8th Cir. 1996).

Federal Rule of Civil Procedure 51 "requires a specific objection to a jury instruction before the jury retires, otherwise 'a litigant waives the right . . . to object to a jury instruction on those grounds.'" *May v. Nationstar Mortg., LLC*, 852 F.3d 806, 819 (8th Cir. 2017) (quoting *Dupre v. Fru-Con Eng'g Inc.*, 112 F.3d 329, 333 (8th Cir. 1997)). However, "a litigant may move for a new trial under Rule 59 based on the overwhelming evidence contrary to the verdict without ever previously raising such an objection." *Pulla v. Amoco Oil Co.*, 72 F.3d 648, 656 (8th Cir. 1995).

Bitters claims Instruction No. 16 (fraudulent misrepresentation) and Instruction No. 17 (breach of fiduciary duty) were confusing and misleading. Bitters further asserts the Court erred in instructing the jury that Bitters owed Petersen a fiduciary duty as a matter of law. Bitters waived these challenges by failing to make them distinctly on the record before the matter was submitted to the jury. *See May*, 852 F.3d at 819. Not only were those objections never raised, but Bitters's counsel clearly stated at the jury instruction conference that both instructions accurately reflected Nebraska law and the state of the case. Accordingly, his present challenge is unavailing.

The Court has already dealt with Bitters's remaining challenges. Bitters maintains the Court erred because Instruction Nos. 16 and 17 and the verdict form are based on claims which are not supported by the pleadings or evidence and for which no damages are

attributable to Bitters. At the Rule 50 hearing and in the Verdict Order, the Court carefully considered and explained its reasons for finding that both the pleadings and the evidence at trial supported the claims and damages against Bitters. The Court will not revisit those issues now. Bitters also challenges Instruction Nos. 16 and 17 as being based on claims barred by the statute of limitations. The Court has exhaustively dealt with Bitters's position on the applicable statute of limitations both herein and on the record at trial. For those reasons, Bitters's present challenge fails.

Finally, Bitters's argument that the verdict form allowed a duplicative verdict is moot. At the jury-instruction conference, the Court expressed concern that the jury could potentially hold both Henry and Bitters responsible for the full amount of the note plus interest resulting in a double recovery, but Bitters offered no solution. When the verdict was returned, the Court determined the estate could not recover the full amount of its damages from both Bitters and Henry. *See Walker v. Probant*, 902 N.W.2d 468, 482 (Neb. Ct. App. 2017) (holding that a party is not allowed double recovery from multiple defendants for the same claim). Accordingly, the Court held Bitters and Henry jointly and severally liable for the estate's losses. In other words, the Court has already remedied the duplicative verdict such that the Court believes no prejudice demands further relief.

### d.    Mary Carter Agreement

Bitters argues the Court erred in denying his motion for mistrial based on an agreement between the estate and Henry. After the jury was empaneled and Henry had exercised his peremptory strikes, the Court and Bitters discovered an undisclosed agreement between the estate and Henry. In the agreement, the estate agreed to dismiss its claims against Henry after trial in exchange for $1.00 and his "truthful" testimony on specified topics with the estate's counsel alone judging the "truthfulness." Bitters moved for a mistrial arguing he was prejudiced by Henry's exercise of peremptory strikes because Henry was a "nominal defendant" rather than a true adversary of the estate. The Court

denied Bitters's motion for mistrial but allowed the agreement to be entered into evidence, shown to the jury, and used to cross-examine witnesses.

According to Bitters, the agreement was a "Mary Carter" agreement and a new trial is warranted because Henry's exercise of peremptory strikes irreversibly prejudiced him. "Mary Carter" agreements draw their name from *Booth v. Mary Carter Paint Co.*, 202 So. 2d 8 (Fla. Dist. Ct. App. 1967), which involved a settlement agreement allying a plaintiff and two defendants against another defendant at trial. Pursuant to the agreement, a ceiling was placed on the settling defendants' maximum liability, contingent on the plaintiff securing a favorable verdict against the non-settling defendant. *Id.* at 10. The Eighth Circuit has explained,

> Mary Carter agreements are settlement agreements where the exact amount of the settlement is not fixed. Rather, the ultimate value of the settlement depends on the amount plaintiff recovers from other defendants, either through settlement or court-awarded damages. Some definitions of Mary Carter agreements further require that the settling defendant remain a party to the suit.

*Robertson v. White*, 81 F.3d 752, 754 n.1 (8th Cir. 1996) (internal citations omitted).

Whether the agreement in this case really was a "Mary Carter" agreement, the agreement caused no prejudice. The Court discovered the agreement early in the trial and does not believe Henry's exercise of peremptory strikes demands a new trial. Whether Henry was truly an adversary of the estate, he was still a party and the Court acted in its discretion in allowing him peremptory challenges. *See* 28 U.S.C. § 1870 ("[E]ach party shall be entitled to three peremptory challenges. Several defendants or several plaintiffs *may be* considered as a single party for the purposes of making challenges, *or* the court *may allow* additional peremptory challenges and permit them to be exercised separately or jointly.") (Emphasis added).

Even if Henry should not have been allowed to exercise peremptory strikes, Bitters failed to meet his burden of showing he was materially prejudiced. Bitters has not explained how the composition of the jury would have been different if Henry was not allotted peremptory strikes or shown the empaneled jury was prejudicial in any way. *See*, *e.g.*, *Carter v. Tom's Truck Repair, Inc.*, 857 S.W.2d 172, 177-78 (Mo. 1993) (concluding that allowing the settling defendant of a Mary Carter agreement to exercise peremptory strikes was not shown to have been prejudicial).

The more-plausible risk in this case came not from Henry's exercise of peremptory strikes, but from the agreement's potential to mislead the jury. If the agreement was not disclosed, the Court and the jury would have been left with a false impression about Henry's relationship with the estate and uninformed of his potential bias. The Court addressed the risk of that prejudice by admitting the agreement into evidence and allowing Bitters to cross-examine witnesses about its contents without limitation. The Court finds its precautions guarded against a miscarriage of justice and a new trial is not warranted.

### e.   Joint and Several Liability

Bitters asserts he is entitled to a new trial because the Court erred in finding him and Henry jointly and severally liable for the estate's damages. Nebraska law is clear "a party may not have double recovery for a single injury," *Tolliver*, 771 N.W.2d at 917, and that "[w]here two causes produce a single indivisible injury, joint and several liability attaches," *Shipler v. Gen. Motors. Corp*, 710 N.W.2d 807, 843 (Neb. 2006). The jury found Bitters liable for fraudulent misrepresentation and breach of fiduciary duty and found Henry liable for breach of contract. The jury calculated the estate's damages to be $356.619.30 as to both. The Court held the estate could not receive *double* the amount of its damages and held Bitters and Henry jointly and severally liable to the estate for $356,619.30.

Bitters argues this "attempt[] to correct" the verdict amount was improper because joint and several liability cannot be imposed with a defendant found liable for breach of

contract. Moreover, Bitters contends joint and several liability is improper where the jury was not instructed on and did not find the existence of a joint or common enterprise. Under Nebraska law, joint and several liability may be imposed where "an act [is] wrongfully done . . . contemporaneously by [several persons] without concert." *Tadros v. City of Omaha*, 735 N.W.2d 377, 380 (Neb. 2007). Here, the jury found both Bitters and Henry were responsible for the estate's losses, and their respective wrongful acts leading to those losses were contemporaneous.

The Court gave Bitters opportunities prior to submitting the case to the jury to present an alternative solution for the possibility of a double recovery verdict. Bitters proposed no alternative either before or after the Court's "attempt[] to correct" the double recovery, and the Court finds its solution is entirely consistent with Nebraska law. *See Lindsay Mfg. Co. v. Harford Accident & Indem. Co.*, 118 F.3d 1263, 1267-68 (8th Cir. 1997). Nebraska law anticipates joint and several liability primarily in tort rather than contract, but in its Verdict Order, the Court already acknowledged and considered the nature of the remaining claim against Henry and predicted that the Nebraska Supreme Court would apply joint and several liability in these circumstances. *See id*. In this new request for relief, Bitters has not mentioned anything the Court did not already consider in its previous order, so the Court finds no reason to change its decision now.

### f. Bitters's Amended Answer and Proposed Supplemental Jury Instruction

Bitters seeks a new trial because "the Court erred in denying [his] Motion for Leave to File Amended Answer [(Filing No. 267]) and Proposed [Supplemental] Jury Instruction [(Filing No. 268)] regarding Plaintiff's failure to mitigate." Bitters sought to amend his answer to include a defense for failure to mitigate damages based on the estate's agreement with Henry and to instruct the jury on the same. Both motions were made after the case was submitted to the jury. Bitters is not entitled to relief.

The defense of failure to mitigate damages is an affirmative defense under Nebraska law, *see Hammond v. Streeter*, 406 N.W.2d 633 (Neb. 1987), and under Federal Rule of Civil Procedure 8(c), the "failure to plead an affirmative defense results in a waiver of that defense," *First Union Nat'l Bank v. Pictet Overseas Tr. Corp.*, 477 F.3d 616, 622 (8th Cir. 2007). Unless the "affirmative defense is raised in the trial court in a manner that does not result in unfair surprise," failure to comply with Rule 8(c) is fatal. *Id.* Here, Bitters did not raise his affirmative defense until *after* the case was submitted to the jury, so it was waived. *Id.*

Bitters also asserts he should have been allowed to amend his pleadings pursuant to Federal Rule of Civil Procedure 15(b)(2). That rule provides, "[w]hen an issue is not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if it is raised in the pleadings." For amendment to be proper under Rule 15(b), the claims must have been validly expressly or impliedly *consented* to. Where a party objects to the inclusion of the claims, there is no valid consent. *Culpepper v. Vilsack*, 664 F.3d 252, 259 (8th Cir. 2011). Here, the estate did not consent to the issue of failure to mitigate damages being tried in the case. To the contrary, the estate repeatedly objected to any mention of its agreement with Henry during trial. Accordingly, Bitters was not entitled to amend at the last minute.

Because Bitters's motion for leave to amend his pleadings was denied, it follows that denial of his supplemental jury instruction on the same issue was warranted. *See Black, Sivalls & Bryson v. Shondell*, 174 F.2d 587, 592 (8th Cir. 1949) (affirming the trial court's refusal to instruct the jury on an issue not tendered by the pleadings). It is within the Court's discretion to deny jury-instruction requests, especially where untimely. *See Ivy v. Sec. Barge Lines*, 585 F.2d 732, 740 (5th Cir. 1978) (affirming that it was not in error for the trial judge to refuse to deliver an instruction made only after the jury had been instructed). Therefore, Bitters is not entitled to a new trial on these grounds.

### III. CONCLUSION

For the reasons stated on the record at trial as supplemented above, the parties' post-trial motions are denied. Accordingly,

IT IS ORDERED:

1. Plaintiff Estate of Joyce Rosamond Petersen's Motion to Alter and Obtain Relief from Aspects of Judgment and for New Trial on Certain Issues (Filing No. 291) is denied.

2. Defendant William E. Bitters's Motion for Judgment as a Matter of Law, or in the Alternative, Motion for New Trial (Filing No. 289) is denied.

Dated this 2nd day of November 2018.

BY THE COURT:

Robert F. Rossiter, Jr.
United States District Judge